## FARMERS' & MILLERS' BANK OF MILWAUKEE vs. THE DETROIT & MILWAUKEE RAILROAD COMPANY.

A bank existing under the laws of this state may purchase any personal property at a sale on an execution in its own favor, or under a mortgage or pledge of the property taken by it as security for a loan in pursuance of section 4, ch. 71, R. S.

Section 8 of said chapter, which *expressly* empowers banks to acquire *real estate* sold on execution in their favor, or under mortgages made to them as security for loans, or where such real estate is conveyed to them in satisfaction of debts previously contracted, does not, by implication, abridge their power to acquire *personal property* in like ways.

Where a corporation may acquire lawfully a certain kind of property, the presumption of law is that it was so acquired, in any action brought by the corporation as owner thereof, where the manner of its acquisition does not appear from the complaint. The defendant must aver and prove that it was acquired illegally, if he relies upon that as a defense.

Acts done by corporations in violation of their charters are not necessarily void. They may by such acts acquire title to property, and transmit it to others.

A carrier who contracts with a corporation to transport goods for it, cannot defend an action for damages resulting from his negligence in transporting such goods, on the ground that the corporation could not lawfully acquire title to them.

APPEAL from the County Court of *Milwaukee* County.

This action was brought to recover damages resulting from the negligence of the defendant in transporting various lots of flour received by it from the plaintiff at Milwaukee in this state, to be transported to the city of New York. The complaint contained no allegation as to the manner in which the plaintiff became possessed of the flour. The defendant admitted the receipt of the flour and its undertaking to transport the same, but denied the negligence and the damages alleged. On the trial, the defendant objected to the introduction of any

evidence on the part of the plaintiff, on the ground that said "plaintiff had no power to make the several contracts disclosed in the complaint; that it had no power to become a dealer in or a shipper of flour." The county court decided "that *prima facie* the plaintiff had no power to deal in, or to become an owner and shipper of flour; and that without an allegation that it had become possessed of the flour in question through the exercise of its lawful business of banking, it could not maintain this action." Judgment of nonsuit; from which the plaintiff appealed.

*H. S. Davis* and *Mat. H. Carpenter*, for appellant, as to the power of the corporation to acquire the flour, cited Ang. & A. on Corp., sec 256; Laws of 1862, ch. 479, sec. 21; *The Mad. W. & M. Pl. R. Co. v. W. & P. Pl. R. Co.*, 5 Wis., 173; *Chautauque Co. Bank vs. Risley*, 19 N. Y., 381; *N. Y. Firemen Ins. Co. vs. Sturges*, 2 Cow., 664; *Safford vs. Wykoff*, 4 Hill, 442; *Far. L. & T. Co. vs. Perry*, 3 Sandf. Ch., 339; *Same vs. Clowes*, 3 Coms., 470; *Blunt vs. Walker*, 11 Wis., 334. 2. To the point that the defendant, having contracted with the plaintiff and acquired its property, was estopped from denying its power to enter into the contract, they cited *The Steam Nav. Co. vs. Weed*, 17 Barb., 378; *Dooley vs. Wolcott*, 4 Allen, 407; *Silver Lake Bank vs. North*, 4 Johns. Ch., 370; *State of Indiana vs. Woram*, 6 Hill, 37; *Chester Glass Co. vs. Dewey*, 16 Mass., 102; *Steamboat Co. vs. McCutcheon*, 13 Penn. St., 13; *The West W. Savings Bank vs. Ford*, 27 Conn., 282; *Worcester Med. Inst. vs. Harding*, 11 Cush., 285.

*Emmons & Van Dyke*, for respondent:

1. The bank might loan money, or advance upon the flour as security; and upon such transactions it might support a mere *possessory* action, such as replevin, trespass or trover; but if the bank could become the *owner* through the medium of such a loan or advance, as it is suggested it could by this court, in *Blunt vs. Walker*, 11 Wis., 346, then it needed an averment to that effect, as ruled by the court below. *Russell*

*vs. Topping*, 5 McLean, 194; *Bank of Mich. vs. Niles*, 1 Doug., 401. This court, it is true, said or suggested, in *Blunt vs. Walker*, in speaking of another class of corporations, that they might in such cases become lawful owners by bidding in at judicial sales. But we answer that, as to banking corporations, they are by this act prohibited from thus acquiring title to personal property. Section 21 of the general banking law authorizes them to "loan money on real and personal securities." The act is silent as to acquiring title to personal property, but not so as to real estate. Section 29 provides that the bank may purchase, hold and convey real estate, 1. When " it shall be mortgaged to it in good faith by way of security for loans made by, or money due it;" or, 2d. When it "shall be conveyed to it in satisfaction of debts previously contracted in the course of its dealings;" or, 3d. Such real estate " as it shall acquire by sale on executions or decrees of any court in its favor." This excludes the right and power of acquiring personal property in the same way. *Expressio unius est exclusio alterius.* *Des Anges vs. Gregory*, 3 Bing. N. C., 85, (32 E. C. L., 50); *Rex vs. North Nibley*, 5 T. R., 21; *Rex vs. Woodland*, 2 East, 166; 2 Dwarris, 712; Smith's Com., 508; Broom's Legal Maxims, 141, 145. Now, as the bank cannot deal in this property generally, and as, by implication and necessary construction of the statute, it is forbidden to acquire title in any of the circumstances pointed out in section 29 as to real estate, it can make no contract nor sustain any action based on the supposed ownership of the property. *Madison Plank Road vs. Plank Road*, 7 Wis., 59.

*By the Court,* DIXON, C. J. We think the doctrine of *Blunt vs. Walker*, 11 Wis., 334, applicable to this case, and that the plaintiff might lawfully have acquired the title to the flour through the medium of a loan of money previously made. It might have done so as purchaser, bidding in order to realize its own debt at a sale upon execution, or at a sale under

a mortgage or pledge, if such security had been taken. One of the modes in which banking associations are expressly authorized to carry on business is, " by loaning money on real and personal securities." R. S., ch. 71, sec. 4. This necessarily carries with it the power to make such securities available according to the ordinary course of business in the country. Of the means usually resorted to for that purpose, that of bidding at judicial sales is considered of the greatest value and importance.

And we do not think this implied power abridged or affected by the provisions of section eight. That section relates to a different subject, the power of such associations to purchase, hold and convey real estate, and affords no foundation for the maxim, that the express mention of one thing implies the exclusion of another. The maxim is applicable only where the express provision relates to the same subject matter. It would be very strange if the giving of express power to purchase, hold and convey real estate mortgaged in good faith by way of security for loans, should be held to destroy or repeal a previous implied grant of power to purchase, hold and convey personal estate in like manner. The two subjects are so distinct and different in their nature, that the legislature cannot be supposed to have had in mind the latter, when making specific regulations with regard to the former. Ever since the enactment of statutes of mortmain, the power of corporations to take and hold real estate has been the subject of great care and jealousy on the part of legislators. They have guarded against the unlimited possession of such power with the utmost watchfulness, and it was to restrain and accurately define the power of banking associations in this respect, that section eight was introduced. It has no reference to personal estate.

It follows from this view of the statute and of the power possessed by the plaintiff, that the court below was wrong in rejecting the evidence offered under the complaint. It was also wrong in holding that *prima facie* the plaintiff had no pow-

er to deal in, or to become the owner and shipper of flour, and that without an allegation that it became possessed through the lawful exercise of its business of banking, the action could not be maintained. The complaint does not show that the flour was unlawfully acquired. The answer does not allege it. It being competent for the bank to acquire it lawfully, the presumption of the law is that it was so acquired. *Odiosa et inhonesta non sunt in lege præsumenda.* The illegality, if it exists, is matter of defense, to be averred and proved by the defendant.

But farther than this, we are of opinion that the defendant is in no position to take advantage of the illegality, even though it were conceded. If the purchase was unlawful—one which the plaintiff could not by its charter rightfully make—yet the defendant was no party to it. The flour was not bought of the defendant; nor is this action brought to enforce any stipulation or agreement arising out of the unlawful purchase. The contract with the defendant, and which is the subject of this action, in itself considered, is lawful and innocent. Having the flour, the plaintiff might well agree for its transportation and sale. The vice, if any, lies farther back, and relates to the source of the title, or the manner of acquiring it. It is well settled that corporations may err; that they have the capacity to do wrong, and may do so by overstepping the limits placed by law to their powers. They may violate their charters; and when they do so their acts are illegal, but not necesarily void. *Bissell vs. R. R. Companies,* 22 N. Y., 263–4 and 283-4 ; *Rock River Bank vs. Sherwood,* 10 Wis., 230, and cases cited. They may acquire title to property in contravention of their charters, and transmit it to others ; and in such case it is no defense for the corporation against the claim of one who, knowing the facts, paid the price at its request, nor excuse for the latter in not crediting the proceeds of a mortgage given to secure the money advanced, that the transaction was *ultra vires.* Neither can the purchaser from a corporation defend against

an action for the price on the ground that the corporation exceeded its legal powers in acquiring the property. *Parish vs. Wheeler*, 22 N. Y., 494; *Rutland & Burlington R. R. Co. vs. Proctor*, 29 Vermont, 93. And the seller who transfers to the corporation and accepts the price, cannot question its right to buy, or reclaim the property. *Burns vs. The Mil. & Miss. R. R. Co.*, 9 Wis., 450, and cases cited. To these might be added many other decisions of the same or similar principles, such as that the purchaser of merchandize on credit from a corporation cannot, in an action for the price, object that the corporation was prohibited by law to carry on such trade (*Chester Glass Co. vs. Dewey*, 16 Mass., 94); that the question of misuser by a foreign corporation will not be investigated or decided by way of setting aside or refusing relief upon *bona fide* contracts (*Silver Lake Bank vs. North*, 4 Johns. Ch., 370; *Steam Nav. Co. vs. Weed*, 17 Barb., 378; *Steamboat Co. vs. McCutcheon*, 13 Pa. St., 13); that the party contracting with a corporation is precluded from denying its corporate existence, or that it is organized as required by law (*Naragansett Bank vs. Atlantic Silk Co.*, 3 Met., 282; *Worcester Med. Inst. vs. Harding*, 11 Cush., 285; *Congregational Society vs. Perry*, 6 N. H., 164; *Manufacturing Co. vs. Davis*, 14 Johns., 238; *Savings Bank vs. Ford*, 27 Conn., 282); and that a corporation is answerable for the contracts of its officers, even though not expressly authorized, when such contracts are entered into publicly and in such manner as to be within the knowledge of the corporators. *Alleghany City vs. McCluskan*, 14 Pa. St., 81.

If the plaintiff's vendors, having received the price, cannot question its title to the flour, it is difficult to perceive upon what principle the defendant is to be allowed to do so. Indeed, it is difficult to perceive how the law is to distinguish between a corporation plaintiff and a natural person plaintiff in such circumstances. Both may have violated the law; both may have acquired the property fraudulently or illegally, and deserve punishment; but no one would say that it constituted a

defense as against the natural person. Let the shareholders proceed by injunction, or the state by forfeiture, if they see fit; but it is not a matter which concerns strangers.

We have already said enough to distinguish this case from that of *Madison Plk. Rd. Co. vs. Watertown Plk. Rd. Co.*, 7 Wis., 59. There the action was founded upon the illegal agreement. It was executory in its nature, and the suit was brought to enforce it. Here the illegality, if it exists, was anterior to and wholly disconnected with the contract upon which the plaintiff brings suit. There is a vast difference between refusing to enforce an illegal contract in a direct proceeding, and turning aside from legitimate transactions for the sake of impeaching it collaterally, at the beck of a stranger, whose sole object is to escape the performance of his own lawful engagements.

Judgment reversed, and a new trial awarded.