## Case No. 2,989.

COLE SILVER MIN. CO. v. VIRGINIA & GOLD HILL WATER CO. et al.

[1 Sawy. 470.][1]

Circuit Court, D. Nevada. Feb. 13, 1871.

PARTIES TO BILL BEFORE SERVICE — EFFECT OF OMISSION ON JURISDICTION — JOINT TRESPASSER OMITTED—AMENDMENT— INJUNCTION—INCAPACITY OF CORPORATION NO DEFENSE TO TRESPASS— WRONGFUL DIVERSION OF WATER—PRELIMINARY MANDATORY INJUNCTION.

1. A person residing out of the jurisdiction of the court, though named as defendant in a bill, is, substantially, not a party to the action, till service of process or appearance.

2. Whenever the making of a person a party to a bill would oust the jurisdiction of the court, as to other parties, such person, if not an indispensable party, may be omitted, for the purpose of exercising jurisdiction, as to other parties, whose rights can be determined without his presence.

3. In an action to restrain the diversion of water by tort-feasors, one of the tort-feasors, who resides out of the jurisdiction of the court, may be omitted.

4. The court may permit an amendment to a bill, by omitting a non-resident, named thereon as defendant, but not served, without prejudice to a motion for injunction.

5. In an action by a corporation for injuries to property in its possession, the court will not, at the instance of the wrong-doers, enter into any inquiry as to the legal capacity of such corporation to hold the property.
[Cited in Southern Pac. R. Co. v. Orton, 32 Fed. 470.]

6. Plaintiff, in excavating a tunnel in a mountain to its mining claim, on the public lands of the United States, struck a subterranean flow of water, which it appropriated and enjoyed for several years. Defendants ran a tunnel from a distant point into the mountain, to a point some thirty feet in altitude, directly below the point where the plaintiff obtained the said water; and, thereupon, the water, which before flowed through plaintiff's tunnel, was intercepted and discharged through defendants' tunnel, and by them appropriated to their own use. *Held*, that said diversion and appropriation of the water was wrongful, and that complainant was entitled to an injunction.

7. Where defendants, by means of a tunnel run into a mountain at a lower altitude than complainant's tunnel, wrongfully intercept water appropriated by complainant, flowing in its said tunnel, and divert it therefrom, a preliminary injunction will be granted, restraining the continuance of said diversion, even though an obedience to the injunction should render it necessary for defendants to build a bulkhead, or dam, across the tunnel.
[Cited in Portland v. Oregonian Ry. Co., 6 Fed. 324; Hatch v. Wallamet Iron Bridge Co., Id. 338. Distinguished in Mutual Union Tel. Co. v. Chicago, 16 Fed. 313.]

In equity. Application for preliminary injunction heard on bill and affidavits. Complainant is a corporation, organized for the purpose of mining for silver. Its grantors took up a ledge supposed to contain silver ores, situate on the side of the mountain, above Virginia City. Complainant excavated a tunnel, commencing in a ravine some distance below the croppings of its ledge, on the surface of the mountain, and extended it into the mountain to and through its ledge at a considerable depth below the surface. In excavating the tunnel, complainant struck a seam in the rock, from which flowed a stream of water, which it claimed, and appropriated, in accordance with the custom in force. The water so discovered and appropriated, the complainant leased to the Virginia and Gold Hill Water Company, a corporation organized to supply water to Virginia City and Gold Hill, one of the defendants, upon certain designated terms. Said water company paid the stipulated rents, and enjoyed the water under said lease for the

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

agreed term. The water was conveyed to Virginia City, and sold to the people for various domestic and other uses. Other parties, also, took up sundry ledges or mining claims on the same mountain. Some claimed to be in front, and some in the rear, of complainant's ledge. Some of the claimants started a tunnel to run to their ledges, commencing lower down the mountain, and at a considerable distance to the southward of the entrance to complainant's tunnel. The excavation of this tunnel, called the "Nevada Tunnel," was prosecuted at times, and the work suspended at times, for several years. Finally the said several defendants, some of whom had acquired a portion of the interest of the original parties in said Nevada tunnel, entered into a contract to extend the said tunnel into the mountain, till they should strike the ledge, called the "Macey Ledge" —the location of which is left very much in doubt by the affidavits, but it cannot be west of or beyond complainant's ledge—or till they should strike water.

It is unnecessary for the purpose of illustrating the points decided to specify the terms of the contract, or to state more specifically the facts. Under this contract the defendants continued to excavate said tunnel in such a line as to strike a point at a lower altitude, directly below the point where complainant discovered and appropriated the water in its tunnel; and they so timed it, that they reached the said point not far from the time when said lease from complainant to the said defendant, the Virginia and Gold Hill Water Company, expired. The complainant insists that defendants extended the said tunnel expressly to take this water; and the defendants, that their object was to prospect ledges lying in the rear. But it did not appear to the satisfaction of the court, that the claim to any ledge mentioned lying in the line of the tunnel to the west or rear of complainant's ledge was located prior to the location of complainant's claim. When the defendants were approaching the point under complainant's tunnel, the complainant filed a bill in this court, stating what it claimed to be the facts; that defendants were running to the point referred to for the purpose of cutting off its water; that they would soon reach the water and intercept it, and prayed an injunction to restrain them from proceeding further. While the motion for injunction was pending, the defendants reached the point, and the water, thereupon, ceased to flow in complainant's tunnel, and was diverted through defendant's said tunnel, and appropriated by them. Thereupon, the five years mentioned in said lease having expired, complainant dismissed its first bill and filed this bill, setting up the new facts, and applied for an injunction to restrain the continuance of said diversion till the final hearing. The value of the water is alleged to be two hundred dollars per day. Since the diversion, it has been taken by defendants at the mouth of their own tunnel, and conveyed to Virginia City for sale as before.

The foregoing is a sufficient summary of the facts, as they appear in the bill and affidavits, to explain the points of the decision, without being more specific.

Mitchell & Stone and S. W. Sanderson, for complainant.

R. S. Mesick, for defendants.

SAWYER, Circuit Judge. As to the question of jurisdiction, the defendant, Glauber, has never been served, and he has not appeared. The bill shows that he is a resident of California, so that he cannot be served, and the court cannot acquire jurisdiction of him in the action unless he voluntarily appears. Although named in the bill, with a prayer that process issue, and he be made a defendant, yet, he is, substantially, not a party to the action until he is served, or till he appears.

The twenty-second and forty-seventh equity rules do not seem to contemplate that a person can be a party, in fact, till service or appearance. At all events, under these rules, when the making of a person a party—unless he is an indispensable party—would oust the jurisdiction of the court as to other parties, he may be omitted for the purpose of exercising jurisdiction as to those other parties, whose rights can be determined without his presence. Shields v. Barrow, 17 How. [58 U. S.] 141.

Upon the omission of Glauber the court would have jurisdiction over all the other parties, and their rights as against the complainant, may be determined without his presence. The acts complained of are tortious, and the cause of action is several, as well as joint. I do not think Glauber an indispensable party to the action. While the decree will finally settle the rights of the parties before the court, it will not bind him, and he may still litigate his claim with the complainant in another action, or he may voluntarily appear in this; for it is not to be presumed that he is in fact ignorant of the pendency of the suit. If Glauber is an indispensable party, it will be impossible for the court to restrain the commission of waste; the working or destruction of a mine; the diversion of water; the flooding of an upper riparian proprietor, or the erection or continuation of any nuisance, however offensive, dangerous, or destructive to the rights of another, when the wrong-doer has an associate or confederate residing out of the jurisdiction of the court, or when the tort-feasor himself keeps beyond the jurisdiction of the court, and performs the tortious acts through his agents and servants. It is notorious, that in the mining regions of Nevada, Oregon and California, and all the mining territories, many trespasses and wrongs of the kind mentioned, requiring the almost daily inter-

position of the courts, are perpetrated by parties having associates residing in other states. To deny relief against wrong-doers in such cases in this circuit, on account of the absence of one tort-feasor, would be to paralyze the right arm of the court in those cases wherein its effectual interposition is most imperatively demanded, and most frequently invoked. Let it be once established that the courts cannot interfere, or grant relief in the absence of one of the joint tort-feasors, and the mining interests of all the gold and silver producing states will, thereafter, be at the mercy of any bad men, who, relying upon a confederate beyond the jurisdiction of the court to enable them to evade all redress for injuries committed, may choose to combine for the purpose of wrongfully availing themselves of the labors and discoveries of others. In my judgment, in such cases it would be far more equitable to compel the absent tort-feasor to appear and defend his right, or submit to any inconvenience that may incidentally result from the execution of any decree entered against his co-trespassers, rather than deny all redress, no matter how grievous, to the injured party, because one of the wrong-doers withdraws and keeps himself beyond the jurisdiction of the court. In the one case the absent party may appear and have his rights adjudicated, if he so desires, and justice will be awarded to all; while in the other, the most grievous injuries must necessarily go wholly unredressed.

For example, can the courts of the United States properly refuse to redress clearly manifest injuries to its own citizens, by restraining the working of a gold or silver mine, waste, or the erection or continuance of a nuisance, because a citizen of Great Britain, residing in England, is interested in the profits of the wrong, or himself, safe in his retreat beyond the jurisdiction of the court, perpetrates it by means of his agents, servants and employees? The court, in such instances, must, from the necessity of the case, assume jurisdiction and proceed to a decree as to the parties before it, or sit helplessly by and permit an absolute failure of justice, by suffering our own citizens to be ruined with impunity by irresponsible, non-resident wrong-doers, or by parties in collusion with them.

On this principle of preventing a failure of justice, and even on grounds of convenience, courts of equity have often dispensed with parties interested in and affected by the suit, in cases calling far less loudly for such action, than the class of cases to which this belongs. Smith v. Hibernian Mine Co., 1 Schoales & L. 240, 241; Rogers v. Linton, Bunb. 200, 201; Attorney General v. Baliol College, 9 Mod. 409; Thompson v. Topham, 1 Younge & J. 556; Cockburn v. Thompson, 16 Ves. 326; Williams v. Whinyates, 2 Brown, Ch. 399; Wallworth v. Holt, 4 Mylne & C. 635, 636; Taylor v. Salmon, Id. 141, 142; Har-

vey v. Harvey, 4 Beav. 220–222; Reynoldson v. Perkins, 2 Amb. 565.

In my apprehension, it is no good answer to say, that the injured party may have his remedy in the state courts, where service may be had on non-resident defendants by publication of summons. The constitution and the laws entitle parties in certain cases to seek redress in the national courts, and the class of cases mentioned, is the very one in which the remedy in the national courts is most valued by litigants, and in this circuit most frequently sought. Besides, it is a mere accident if the state laws admit of acquiring jurisdiction in this mode. I doubt whether many of the states, if any, east of the Rocky Mountains, authorize a publication of summons at all, in that class of cases. If they do, when an action is commenced in a state court by a citizen of the state, and all the defendants are citizens of another state or foreigners, it is their absolute right to have a transfer to the national courts, and a transfer by the defendants served in the state would oust the jurisdiction, if any defendant should be a non-resident; for, in the national courts service by publication could not be recognized. Thus there would still be an evasion of the remedy and a failure of justice.

To my mind there is an obvious distinction between torts of the class to which this action belongs, wherein the injury and right of action are several as well as joint; and actions of partition, for the canceling of contracts, settlement of partnership affairs, and the like, wherein the decree is not binding even on the parties before the court in the absence of a party in interest. Such were the cases of Shields v. Barrow, 17 How. [58 U. S.] 139, and Barney v. Baltimore City, 6 Wall. [73 U. S.] 280.

In Marker v. Marker, a tenant under a claim of right, had sold to a stranger a large quantity of timber still uncut and standing on the premises occupied by him. A bill was subsequently filed to restrain the vendor from cutting the timber, in order that he might fulfill his contract of sale, but without making the purchaser a party. On objection for want of parties, the court held that the purchaser was not an indispensable party. 9 Hare, 1, 5, 12, 16. This case determines the principle, for the decree must necessarily have affected the rights of the purchaser of the timber.

Had Glauber's name been omitted there could have been no question as to jurisdiction, and he has not been brought within the jurisdiction of the court by service or appearance. My impression is that the jurisdiction is not ousted by merely naming him in the bill when it appears that he cannot be served. Glauber himself is not present to make, and he does not make, the objection to the jurisdiction, and the other parties who do raise the objection are in no way affected by his absence, or by his being named in the

bill. But, however that may be, since he might have been omitted in the first instance to prevent an ouster of the jurisdiction as to the other parties, I see no reason why the bill may not now be amended, before he is brought in, by omitting his name for the same purpose, without prejudice to the motion for an injunction; and the complainant asks leave to amend. I can perceive no good reason why leave should not be granted.

As to the merits. The leading and material facts alleged, showing the right to the water in question, as between the parties to the action, are not denied by the affidavits of the defendants. The water, as is shown by the bill, was discovered and actually appropriated by the plaintiff, and was enjoyed by it for many years, it having been sold to and paid for by the defendant, the Gold Hill Water Company, for several years prior to September, 1870. The plaintiff, upon the facts alleged, was also necessarily in actual possession of the land out of which the water issued for the purpose of its tunnel, and of taking and enjoying the water, and so far as was necessary to the accomplishment of these objects. Upon the facts as they appear in the bill and affidavits of the moving party, the complainant was the first actual appropriator of the water, and it acquired the right as against the defendants, if capable of so acquiring it.

It is urged that plaintiff was incorporated for mining purposes only, and that it, consequently, has no capacity to acquire a right to the water. But water is required for mining purposes, and in the before-mentioned lease to the defendant, the Virginia and Gold Hill Water Company, the complainant reserved a portion of said water, sufficient for its mining purposes, and only sold the remainder.

So far as required for mining purposes, a capacity to acquire the right to water necessarily exists as incident to the business of mining. But suppose, in pursuing a mining enterprise, other valuable things are found in the path of the work, cannot the corporation appropriate and use them to defray its many expenses, or enhance its profits? Must they be passed by and allowed to go to waste for want of a capacity to make them available, when the corporation can, in fact, render them available and useful in contributing to the success of the main enterprise?

May it not avail itself of all the incidental results of labor necessarily expended in pursuit of the real object for which the corporation was created, because some of these results were not made a specific object to be attained?

If a company is incorporated to mine for silver only, must it discard any gold that it may find in its mine, or in excavating to reach its mine? or if it should chance to fall upon a nest of diamonds in the bowels of the earth while running a drift for its silver ores, must it pass by the glittering treasures with averted eyes, because it has no legal capacity to pick them up and appropriate them to the expenses of the work, or an enhancement of the profits of the enterprise?

Running a tunnel to enable the plaintiff to reach its ledge is, certainly, a legitimate part of the business of mining. Why may it not appropriate everything valuable, not belonging to anybody else, that turns up in the line of the excavation, to pay the expenses of the work, or enhance the profits of the investment? Is it not one of the incidents to the work which the party developing it may render available?

In the affidavits filed, the defendants disclaim the idea that they are running the Nevada tunnel for the purpose of obtaining the water in question, but insist that they are running for the purpose of developing mines belonging to other parties. To that extent, then, the Virginia and Gold Hill Water Company, at least, is itself doing that which it has no legal capacity to do.

But it is enough to say, that the defendants, whether corporations, or natural persons, are not in a position to defend a trespass, on the ground that the plaintiff has no legal capacity to acquire the right in question. That the plaintiff may, legitimately, acquire a right to sufficient water for its mining purposes, is clear. Having the capacity to a limited extent, at least, to acquire a water right, whether they have assumed to acquire a larger right than their wants justify, or whether they use the water discovered and appropriated in the progress of their work for other purposes than mining, is no concern of defendants. A party who has trespassed upon the actual possession of the complainant cannot defend on that ground. It is a question between the corporation and the government. By express provision of statute, corporations are usually limited in their purchases of real estate. for instance. to such as are actually necessary to the exigencies of their business. But suppose a much larger amount should be conveyed to a corporation than it was authorized to take, it would not be contended, I apprehend, that a trespasser who had taken possession of a portion of such excess of land, could successfully set up a want of capacity in the corporation to take as a defense to an action of ejectment by the corporation. As between the party despoiled and the wrong-doer, the courts will not enter upon this inquiry. Farmers' & Millers' Bank v. Detroit & M. R. Co., 17 Wis. 372; Chester Glass Co. v. Dewey, 16 Mass. 94; Whitman G. & S. Min. Co. v. Baker, 3 Nev. 386; Natoma Water & Min. Co. v. Clarkin, 14 Cal. 552.

The defendants do not admit that they have been running their tunnel for the express purpose of cutting off the water in question, as alleged in the bill. They would hardly have the boldness to set up a right to take the water from plaintiff, if it is, in fact, the first appropriator.

They allege their object to be, to reach and develop certain mining claims. I am by no means satisfied that it is not the sole object of all the defendants to the action to secure this water.

The Virginia & Gold Hill Water Company was organized for the purpose of supplying Virginia City and Gold Hill with water, and any other purpose, as an end to be attained, than the procuring of water, would be wholly foreign to the objects of its incorporation. And the other defendants do not satisfactorily appear to have any interest in the mining claims set out in the affidavits.

The contracts set out in the defendants' affidavits, beginning with the principle one of April 29, 1867, have all been entered into long since the complainant discovered and appropriated said water, and leased it to the first defendant named in the bill, and that contract expressly refers to water as the principal object sought. The subsequent contracts are stated to have been made in pursuance of the provisions of that contract and to carry it out. Water, then, from the date of those contracts, at least, must have been the object of the defendants and their grantors, and the supply of water in question was known to exist, for it had already been discovered and appropriated, and it does not appear that there is any other known supply on the line of the defendants' tunnel.

The tunnel, since that time, has been excavated in a nearly direct line towards a point some thirty feet in altitude immediately underneath the point where complainants appropriated the water, until said point was reached, and the water thereby taken.

There can be no doubt, upon the facts as they now appear, that, but for the acts of the defendants in running their tunnel below that of complainant, the water which now flows through defendants' tunnel, would still flow through the tunnel of complainant, as it was wont to do in times past. The water ceased to flow in complainant's tunnel within a few hours after it was struck in defendants' tunnel. Indeed, this is not denied. If, then, the defendants excavated their tunnel expressly to cut off this water, before discovered and appropriated, and divert it from the complainant, their act is wrongful.

If, on the other hand, this was not their object, but the object was to prospect and develop claims owned by them, lying to the westward of complainant's ledge, and the water was necessarily diverted by running their tunnel at the place indicated, it was still wrongful, unless they had a right to so run it, regardless of the appropriation by complainant. Had they such a right?

"Sic utero tuo ut alienum non laedas," is one of the time-honored maxims of the law, and I do not perceive why it should not apply in this case.

I know of no principle of law that permits one man to destroy the property of another, or invade the rights of another, in order to enable him the more conveniently to obtain access to, and use, his own.

It may be, that, in a mining country situated as this is, a court would not restrain a party from merely running a tunnel through his neighbor's ledge, far below the surface, in order to reach his own, when it could be done without material damage, and there is no appropriation of his neighbor's property involved in the proceeding. To do so, might be to throw unreasonable obstacles in the way of carrying on great and highly important enterprises. But, however that may be, I know of no principle that would justify the owner of one ledge, or mine, in absolutely destroying the mine or property of another, not held subject, or in subordination to, the right of the party working the destruction, in order to conveniently reach his own. This would be a palpable violation of the maxim cited.

Water is a highly important element in conducting mining enterprises in California and Nevada, and it is very generally known that it is scarce in Virginia, and the supply of this indispensable necessity for domestic and other uses to the people of Virginia City is almost all, if not wholly, derived from mining tunnels. A stream of water, therefore, thus found in a tunnel excavated for mining purposes, is often as valuable to the possessor as the mine itself; and, to take any such supply of water from one who has acquired a right to it, by means of a tunnel excavated by another party not having a superior right, for the purpose of prospecting or working his own mine, is as clearly a violation of the maxim as the destruction of a neighbor's mine in the same mode.

The authorities cited to the point, that, where one has a spring on his own land, supplied by percolating water, coming from his neighbor's premises, such neighbor may, by digging in his own land, cut off the supply, admitting them to be correct, do not appear to me to reach this case.

The defendants do not appear, by the affidavits, to have made the diversion by digging in their own lands. The water is not shown to have come from their own ledges, or from their immediate vicinity, or from any land to which they have a prior right. It does not satisfactorily appear that any one of the ledges mentioned in the papers lying west of or beyond complainant's ledge, that could be reached or prospected by defendants' tunnel, is a prior location to that of complainant's, or that defendants have a prior right to anything in the line of their tunnel to the west, of complainant's ledge. The diversion is accomplished, taking the view most favorable to the defendants, by running a tunnel through other lands in search of ledges claimed by themselves, and ledges too, the location of which, if they have any real existence, seem as yet, and, according to defendants' own affidavits, after a ten years' search, to be entirely unknown. In doing

this, they ran directly beneath the place where the complainant appropriated the water on the same land, and cut it off from below. A very different condition of things from that which existed in the cases cited.

I presume it would not be maintained, that defendants in searching for their own mine, could run their tunnel for that purpose directly under complainant's tunnel for its entire length, and so near it, that complainant's tunnel would fall in, and be destroyed, or thus destroy any essential part of it, not passing through defendants' own ledge, or ground to which they have a prior right. This would be an injury of a strictly analogous kind.

The facts are not fully developed, and without a full discussion of the point, at this time, it is sufficient to say, that in my judgment, as the case is now presented by the bill and affidavits, the matters shown by defendants are not sufficient to overthrow the case made by the complainant. I think it very apparent, upon the case as now presented, as between the parties, that the complainant has the prior right to the water, and that it has been wrongfully cut off and diverted, by means of defendants' tunnel.

It is shown, and this does not seem to be seriously controverted, that the water can be restored by building a water-tight wall or bulkhead across the tunnel at a point indicated. But it is urged, that the injury has been committed, and that, this being so, the court will not, on motion for a preliminary injunction, issue a mandatory writ, affirmatively commanding the performance of an act such as to fill up a tunnel, rebuild a wall that has been demolished, and the like; and so the authorities seem to be.

But, while this seems to be an established rule, it, also, appears to be well established, that the result sought may be accomplished by an order merely restrictive in form. For example, if the water of a stream be raised by means of a dam, so as to wrongfully flood a party's land above, or obstruct with backwater, a mill situated higher up the stream, while the court will not direct the defendant in terms to remove the dam, it will require him to refrain from overflowing the land, or obstructing the mill, even though it be necessary to demolish the dam in order to obey the injunction. So if a party, by means of a dam, or canal, should wrongfully divert the water of a stream from the mill of his neighbor, clearly entitled to it, the court would restrain the continuance of the diversion, even though an obedience to the injunction should render it necessary to remove the dam, or fill up the canal. 2 Eden, Inj., by Waterman, 388; 3 Daniell, Ch. Pr. 1767, and notes, last edition. Robinson v. Lord Byron, 1 Brown, Ch. 588; Lane v. Newdigate, 10 Ves. 192; Rankin v. Huskisson, 4 Sim. (6 Eng. Ch.) 13; Earl of Mexborough v. Bower, 7 Beav. (29 Eng. Ch.) 127; Murdock's Case, 2 Bland, 470, 471; Washington University v. Green, 1 Md. Ch. 502–504; North of England C. & H.

J. R. Co. v. Clarence R. Co., 1 Colly. (28 Eng. Ch.) 521; Spencer v. London B. R. Co., 8 Sim. (8 Eng. Ch.) 193.

Under these authorities, by whatever name judges may see fit to call the injunction, the defendants may be restrained from continuing to cut off and divert the water in question, even though it should be necessary for them to fill up, or build a water-tight barrier across the tunnel to accomplish the end sought.

Upon the facts as now presented, I think the water is wrongfully diverted from complainant's tunnel by means of the tunnel of defendants, and that complainant is entitled to a temporary injunction restraining defendants from continuing the diversion, till the rights of the parties can be more fully ascertained.

For the present, I will fix the amount of the injunction bond at $15,000, with leave to defendants to move to increase the amount, at any time, if this amount be deemed too small.

Let an order be entered granting leave to complainant to amend its bill by striking out the name of Glauber as a defendant, without prejudice to the motion for an injunction, and upon such amendment being made, and on filing a bond to be approved by the clerk, or district judge, in the sum of $15,000, that a writ of injunction be issued by the clerk in the form indicated, restraining the defendants, their attorneys, agents and servants from further, by means of their tunnel or otherwise, taking or diverting the water, or any portion thereof, which heretofore flowed from complainant's ledge, and from the spring or point mentioned in the bill of complaint, about forty-eight feet west of said ledge, through and out of complainant's tunnel, or which would flow into and through said complainant's tunnel from said sources, but for the defendants' tunnel; and from receiving said water, or any part thereof, into and through said defendants' tunnel, and thereby depriving the said complainant thereof, until the further order of the court.

[NOTE. Defendant, the water company, subsequently moved on the bill and answer to dissolve the preliminary injunction, and the motion was denied. Case No. 2,990.]