## COMPAÑÍA AZUCARERA DE LA CAROLINA, RECURRENTE, *v.* EL REGISTRADOR, RECURRIDO.

## RECURSO gubernativo contra resolución del Registrador de la Propiedad de San Juan, Sección 1ª.

No. 123.—Resuelto en febrero 27, 1913.

El Registrador de la Propiedad de San Juan, Sección 1ª., se negó a inscribir a favor de una compañía agrícola una escritura, porque del registro constaba que dicha corporación tenía inscrita ya más de 500 acres y una fracción, y que toda adquisición en exceso de dicha suma, infringía la Resolución Conjunta del Congreso de mayo 1, 1900, que enmienda la Ley Foraker, no constando que la nueva adquisición fuera necesaria para los fines para los cuales la corporación había sido creada. *Se resolvió* lo siguiente:

CORPORACIONES—LIMITACIÓN DE SUS FACULTADES PARA POSEER TIERRAS—EX-TRANJEROS—PROCEDIMIENTO PARA OBTENER LA REVERSIÓN DE TIERRAS (OFFICE FOUND).—Las corporaciones y los extranjeros están considerados en los Estados Unidos por la ley bajo el mismo concepto en esta materia, y aunque se les prohibe o limita la posesión de tierras, tienen pleno poder de dominio sobre ellas hasta que el Gobierno o el Estado intervienen. El procedimiento contra extranjeros para obtener la reversión de tierras se denomina "*office found.*"

ID.—FACULTADES DE LAS CORPORACIONES.—Tales corporaciones pueden entablar acciones de reivindicación, desahucio, o exigir el cumplimiento de contratos, pues su título es válido contra todo el mundo excepto el Estado.

ID.—LEY ORGÁNICA.—La Ley Orgánica no prohibe la adquisición de tierras, sino que limita el dominio y manejo de las mismas a 500 acres.

REGISTRADORES DE LA PROPIEDAD—FACULTADES DE LOS MISMOS.—Un registrador está obligado a inscribir un documento a favor de una corporación agrícola, aunque la ley prohiba el dominio y manejo de más de 500 acres. La ley únicamente le obliga a examinar determinados documentos y la historia anterior de la finca en cuestión.

ATTORNEY GENERAL—PODERES—CORPORACIONES—ULTRA VIRES.—El Attorney General es el funcionario autorizado por la Ley Orgánica en relación con los estatutos revisados de los Estados Unidos, para iniciar procedimientos contra corporaciones que actúen fuera de sus atribuciones (*ultra vires*). La sección 73 del Código Político se pronuncia en el mismo sentido.

REGISTRO DE LA PROPIEDAD — INSCRIPCIÓN. — Nadie está obligado a inscribir su propiedad para obtener dominio pleno sobre la misma.

ID.—HECHOS O DEDUCCIONES DE UNA ESCRITURA.—El silencio de una escritura con respecto a determinadas excepciones de la limitación que establece la Ley Orgánica, no impide la existencia de tales excepciones. Lo mismo puede decirse de la supuesta infracción de la constitución de una compañía.

ID.—CUESTIONES DE HECHO.—El registro no es la oficina en donde deben resolverse cuestiones de hecho en discusión.

Los hechos están expresados en la opinión.

Abogados del recurrente: *Sres. Bosch y Soto.*

El Registrador no compareció.

El Juez Asociado Sr. Wolf, emitió la opinión del Tribunal.

El día 16 de abril de 1912 la Compañía Azucarera de la Carolina presentó en el registro de la propiedad de esta ciudad dos escrituras para su inscripción. Estas escrituras eran compraventas de fincas rústicas otorgadas por Rosales & Compañía a favor de la apelante. El registrador denegó la inscripción de cada una de ellas poniendo al final de las mismas la siguiente nota:

"Denegada la inscripción del documento que precede, porque resultando de él que adquiere una corporación organizada con arreglo a las leyes de Puerto Rico, es absolutamente necesario tener a la vista sus cláusulas constitutivas para determinar la capacidad jurídica de la corporación en cuanto a sus adquisiciones territoriales; pues si 'The Carolina Sugar Company' es una corporación destinada a la agricultura, apareciendo ya inscritas a su favor en este registro quinientas cuerdas 50/100 de otra de terreno, la adquisición objeto del presente título resulta ilegal y nula por consiguiente porque infringe la prohibición de la sección 3ª. de la Resolución Conjunta del Congreso de 1º. de mayo de 1900; y en el supuesto de que dicha corporación no estuviere destinada a la agricultura, se incurriría en la misma prohibición por no resultar que esta nueva adquisición sea razonablemente necesaria a la adquirente para llevar adelante los propósitos a que obedeció su creación."

La ley a que hace referencia el registrador es como sigue:

"Sección 3.—Que todas las franquicias, privilegios o concesiones otorgadas de acuerdo con la sección 32 de dicha ley, estarán sujetas a enmiendas, alteraciones o revocaciones; en ellas se prohibirá la emisión de acciones u obligaciones, excepto cuando tal emisión se realice a cambio de dinero al contado o de propiedades cuyo justiprecio sea igual al valor, a la par, de las acciones u obligaciones expedidas; se prohibirá la declaración de dividendos de acciones u obligaciones; y cuando se trate de sociedades para llenar un servicio público, se acordarán reglamentos eficientes que fijen los precios de dicho servicio, y en caso de compra o traspaso a las autoridades públicas

de las propiedades pertenecientes a dichas sociedades, los reglamentos fijarán el precio en un valor justo y razonable. Ninguna sociedad estará autorizada para efectuar negocios de compra y venta de bienes raíces, ni se le permitirá poseer o tener dicha clase de bienes a excepción de aquellos que fuesen racionalmente necesarios para poder llevar adelante los propósitos a que obedeció su creación; y en lo sucesivo el dominio y manejo de terrenos de toda sociedad autorizada para dedicarse a la agricultura, estarán limitados, por sus estatutos, a una cantidad que no exceda de 500 acres, y esta previsión será adoptada para impedir a cualquier miembro de una sociedad agrícola que tenga interés de·ningún género en otra sociedad de igual índole. 'Podrán, sin embargo, las sociedades efectuar préstamos con garantías sobre bienes raíces y adquirir éstos cuando sea necesario para el cobro de los préstamos, pero deberán enajenarse dentro de los cinco años desde que reciban el título de propiedad de los mismos. Las sociedades que no hayan sido organizadas en Puerto Rico y que hagan negocios allí, estarán obligadas a cumplir lo dispuesto en esta sección, hasta donde sea aplicable.''

La cuestión planteada por el apelante se refiere, a si, con arreglo a la Ley Orgánica y las leyes vigentes en Puerto Rico, tiene facultad el registrador para denegar la inscripción de un documento por constar del registro que cierta corporación agrícola posee más de 500 acres de terreno.

El artículo 18 de la Ley Hipotecaria es como sigue:

''Los registradores calificarán bajo su responsabilidad la legalidad de las escrituras en cuya virtud se solicite la inscripción y la capacidad de los otorgantes por lo que resulte de las mismas escrituras.

''Del mismo modo calificarán, bajo su responsabilidad y para el único efecto de admitir, suspender o negar su inscripción o anotación, todos los documentos expedidos por la autoridad judicial.

''Contra la suspensión o denegación de inscripción o anotación preventiva, no se darán más recursos que los señalados en esta ley, sin que los jueces o tribunales puedan obligar en otra forma a los registradores a que inscriban o anoten en virtud de documentos judiciales.''

El artículo 6 dispone que:

"La inscripción de los títulos en el registro podrá pedirse indistintamente:

"Por el que transmita el derecho;

"Por el que lo adquiera;

"Por quien tenga interés en asegurar el derecho que se deba inscribir.

"Por quien tenga la representación legítima de cualquiera de ellos."

Y según el artículo 18 a que ya hemos hecho referencia, la legalidad de las escrituras ha de determinarse por lo que resulte de las mismas, teniendo en cuenta, según el artículo 17, los asientos del registro referentes a la misma finca.

Trataremos en primer lugar de determinar la naturaleza del documento que en el presente caso trató de inscribir la corporación apelante.

En el caso de *Fritts* v. *Palmer,* 132 U. S., 282, se resolvió la cuestión relativa al derecho que tenía una corporación extranjera para adquirir bienes inmuebles en el Estado de Colorado, resolviendo la corte que tal vez sería una interpretación razonable del estatuto el declarar que una corporación extranjera no puede comprar o poseer bienes inmuebles en Colorado, hasta que la misma adquiera en la forma prescrita por las leyes locales el derecho de hacer negociaciones en ese Estado, pero esa escritura no fué por ello considerada como absolutamente nula en cuanto a todas las personas y para todos los fines, puesto que la Constitución y las leyes de Colorado no prohibían a las corporaciones extranjeras comprar y poseer bienes inmuebles situados dentro de sus límites.

El Juez Asociado Sr. Harlan examinó todas las autoridades citadas en aquel caso que demuestran, que cuando una corporación va a adquirir un título sobre bienes inmuebles, la venta que a dicha corporación se haga no es nula sino que puede anularse, y prosigue la corte expresándose como sigue:

"A los casos citados anteriormente puede agregarse aquellos en los que se resuelve que un extranjero puede adquirir por escritura o documento público y poseer contra cualquier persona a excepción del soberano, hasta que se haga la investigación oficial. *Cross* v. *De*

*Valle*, 1 Wall., 1, 13; *Góverneur* v. *Robertson*, 11 Wheat., 332; *National Bank* v. *Matthews*, 98 U. S., 621, 628; *Phillips* v. *Moore*, 100 U. S., 208. Y también aquellos en los que se declara que la cuestión de si una corporación que tiene capacidad para comprar y poseer bienes inmuebles para ciertos fines que han sido especificados, o en determinadas cantidades, ha adquirido título sobre bienes inmuebles para fines que no están autorizados por la ley o en exceso de la cantidad que le está permitida por sus cláusulas de incorporación, es una cuestión que solamente incumbe al Estado dentro de cuyos límites se encuentra situada la propiedad. Dicha cuestión no puede ser promovida indirectamente por personas particulares a menos que exista alguna disposición en el estatuto que de modo expreso o tácito les autorice para ello. *Cowell* v. *Springs Co.*, 100 U. S., 55, 60; *Jones* v. *Habersham*, 107 U. S., 174, 188.''

*Fritts* v. *Palmer*, 132 U. S., 282.

Por tanto, los extranjeros y las corporaciones son consideradas de igual manera en lo que respecta a la capacidad para adquirir y poseer bienes inmuebles. Esta sentencia ha sido revisada y confirmada en el caso de *Blair* v. *Chicago*, 201 U. S., 450, 451.

En el caso de *The National Bank* v. *Matthews*, 98 U. S., 628, se resolvió que cuando una corporación no tiene capacidad con arreglo a sus estatutos para adquirir un título sobre bienes inmuebles, la venta que a dicha corporación se haga no es nula sino que solamente puede ser anulada, y únicamente el soberano podrá oponerse. En dicho caso se ha establecido una comparación con los extranjeros que pueden poseer bienes hasta tanto se haga una investigación. Este caso fué revisado y confirmado en el de *Kerfoot* v. *Farmers & Merchants' Bank*, 218 U. S., 287.

Asimismo se resolvió en el caso de *Cowell* v. *Springs Co.*, 100 U. S., 60, que cuando una corporación tenía necesidad de efectuar una transacción de compraventa determinada para poder llevar a efecto sus negociaciones, ésta era una cuestión entre el Estado y la corporación y no de la incumbencia de una persona particular. Y en el caso de *Phillips* v. *Moore*, 100 U. S., 208, se resolvió que con arreglo a la ley común, un

extranjero no puede adquirir bienes inmuebles de conformidad con la ley, pero podía obtenerla por voluntad del cedente y estar en posesión de la misma hasta que se hiciera una investigación sobre el particular, o sea, hasta que el hecho relativo a la extranjería quede completamente acreditado por un funcionario público a virtud de la investigación que haya tenido lugar a instancia del Gobierno. En esta opinión se demostró que el procedimiento en donde aparecía la determinación del hecho con motivo de la investigación del funcionario se le conocía o designaba técnicamente en los libros de ley con la frase de investigación oficial (*office found*). Por medio de esta investigación quedaba esclarecida la incertidumbre que había acerca del hecho por virtud de cuya existencia la ley enajenaba la propiedad y la traspasaba al gobierno convirtiéndola en una cuestión que había de demostrarse por medio de pruebas. Se enajenaba la propiedad según los antiguos tratadistas de derecho, como un medio auténtico para dar al rey su derecho por medio de un solemne testimonio sin el cual generalmente no podía adquirir o traspasar ninguna cosa, pues se consideraba "que una parte de las libertades de Inglaterra y principalmente para la seguridad del súbdito, que el rey no puede penetrar o secuestrar las propiedades de ninguna persona por meras sospechas, sin que tenga intervención un jurado."

Parecida sentencia se dictó en el caso de *Jones* v. *Habersham,* 107 U. S., 188.

En el caso de *Louisville School Board et al.* v. *King,* 15 L. R. A., (N. E.), 379, se resolvió que un tercero, que compre a una corporación que posea bienes que sean confiscables, estaba garantizado en su derecho hasta tanto el Estado iniciara los debidos procedimientos. En Kentucky al surgir el caso se prohibió a las sociedades bancarias adquirir bienes inmuebles por más de cinco años a menos que lo hicieran para sus fines legítimos so pena de ser confiscadas, y la corte resolvió que ni por la Constitución ni por el estatuto se disponía que la corporación sería privada de tales bienes inmuebles o

que el título pasaría al Estado, y la cuestión relativa a si la propiedad era o no de utilidad pará el negocio de la corporación, era una que no estaba comprendida en los autos. Las autoridades han sido revisadas en la página 385 así, como también en una nota que aparece en el mismo caso y que principia en la página 379; en este caso se ordenó el cumplimiento específico del convenio.

Otros casos que tratan de la cuestión general, son los de *Wunderle* v. *Wunderle,* 19 L. R. A., 84, y *Lancaster* v. *Amsterdam Improvement Co.,* 24 L. R. A., 322.

De acuerdo con este principio, se ha resuelto de diversas maneras que una corporación tiene todas las facultades y atribuciones que puede tener cualquier individuo. Por ejemplo, en el caso de *American Mortgage Co.* v. *Tennille,* 12 L. R. A., 529, se resolvió que cuando una corporación a la cual la ley prohibía poseer más de 5,000 acres, compraba un pagaré garantizado por una escritura de la finca y aceptaba un traspaso del poseedor de dicha finca si bien entonces la corporación era dueña de más de 5,000 acres, se resolvió que dicho traspaso era válido. Otros casos concernientes al principio general se citan en las notas de dicho caso.

Frecuentemente se ha resuelto que no constituye una defensa a una acción reivindicatoria establecida por una corporación el hecho de que se le hubiera traspasado una mayor cantidad de terreno de la que podía poseer. *Bank* v. *Railroad Co.,* 17 Wis., 372; *Glass Company* v. *Dewey,* 16 Mass., 94, 102; *Mining Co.* v. *Baker,* 3 Nevada, 391; *Mining Co.* v. *Clarkin,* 14 Cal., 552. En el último caso que ha sido citado, el Juez Asociado Sr. Field, hablando a nombre de la corte, se expresó en los términos siguientes:

"No es una cuestión esencial el investigar acerca de si los bienes en controversia pertenecientes a la corporación, son necesarios para estos fines; esa es una cuestión entre el Gobierno y la corporación no de la incumbencia de los demandados. Se ocasionarían ilimitadas inconveniencias y molestias si en los pleitos seguidos por las corporaciones para reivindicar la posesión de una propiedad, se permitieran

investigaciones con respecto a la necesidad de dichos bienes para los fines de su corporación y el título se hiciera basar en la existencia de dicha necesidad.''

En el volumen 3 de Nevada, pág. 391, la corte después de discutir la cuestión se expresa como sigue:

''Por tanto, una escritura que se otorgue a una corporación minera no es nula *prima facie.* Si han infringido la ley al adquirir una cantidad mayor de terrenos de aquélla que les está permitida, entonces han cometido un error, no contra un individuo particular, sino contra toda la comunidad, y este error solamente puede ser investigado mediante un procedimiento que habrá de iniciarlo el Estado. Su derecho a la finca si compran de una persona que tenga título o su posesión si solamente derivan el título de la ocupación, *les da un derecho a poseer contra todo el mundo excepto el Estado.''*

Muchos otros casos se han citado y revisado en el caso de *Southern Pacific R. R. Co.* v. *Orton,* 32 Fed., 457. En dicho caso y en Thompson sobre Corporaciones, párrafo 5796, se demuestra que la regla autoriza a una corporación a la que se ha hecho una cesión de bienes inmuebles para entablar una acción contra un usurpador con el fin de recobrar la posesión de dichos bienes; y no se permitirá al usurpador hacer alegación alguna relativa al título de la corporación por el fundamento de que la misma no estaba autorizada para adquirir los bienes.

En el tomo 10 de Cyc. página 1138 y en las citas contenidas en el caso de *Fritts* v. *Palmer,* arriba citado, en las notas de Roses a las Decisiones de los Estados Unidos, tomo 11, pág. 836, pueden encontrarse algunas en lo que se hace referencia a otras facultades.

Se verá por tanto, que una corporación cuyas facultades están limitadas por la ley o por sus estatutos, tiene hasta tanto el Estado intervenga, todas las facultades y capacidad que cualquier otro individuo capaz de adquirir bienes inmuebles, posea. La corporación puede ejercitar cualesquiera actos de dominio sobre dichos bienes inmuebles; puede esta-

blecer acciones reivindicatorias o de desahucio, y exigir el cumplimiento específico de cualquier contrato. Tiene un título absoluto contra todo el mundo excepto el Estado después que se ha iniciado un procedimiento adecuado en una corte de justicia. Las disposiciones de la ley en Puerto Rico no son diferentes. La Ley Orgánica no prohíbe la adquisición de bienes inmuebles sino que expresa solamente que una corporación dedicada a la agricultura, estará limitada con arreglo a sus estatutos al dominio y posesión de una propiedad que no exceda de 500 acres de terreno.

Con arreglo a la Ley Hipotecaria, el registrador solamente tiene facultad para examinar la legalidad del documento que se le somete para su inscripción y según el artículo 6 de la ley citada anteriormente, deberá inscribir cualquier derecho que pueda tener una corporación, estando, por consiguiente, obligado a inscribir el traspaso que se haga a la corporación, sin que para nada tenga que tener en cuenta el hecho de que exista o no alguna prohibición en sus estatutos. La ley no prohíbe la adquisición de más de 500 acres ni existe en ella ninguna disposición que prohíba a las corporaciones adquirir bienes inmuebles. El registrador tiene solamente obligación de examinar los documentos que se le someten y los antecedentes de los bienes en cuestión. No hay disposición en la ley que exija al registrador que haga investigación alguna en sus registros para resolver si determinada corporación ya tiene inscritos más de 500 acres de terreno.

La Ley Orgánica en su artículo 21, dispone que el Fiscal General tendrá todas las atribuciones y ejercerá todas las funciones que por la ley corresponden a un fiscal de territorio en los Estados Unidos, hasta tanto no sean localmente inaplicables.

Y por el artículo 771 de los Estatutos Revisados de los Estados Unidos, entre otros deberes, el Fiscal General tiene el de entablar todas las acciones civiles en las que los Estados Unidos sean parte, y según otros artículos, los fiscales de los territorios tienen iguales facultades que los fiscales de las

Cortes de Distrito de los Estados Unidos, de modo que las disposiciones contenidas en dicho artículo parecen determinar cuál es el funcionario que deberá proteger los intereses de Puerto Rico y quién establecerá las acciones en cobro de alguna multa o confiscación.

Además, el artículo 73 del Código Político, según ha sido enmendado por las leyes de 1906, dispone que el Attorney General a instancias del Comisionado del Interior, promoverá demandas para la restitución de todos los bienes raíces y muebles, cuyos títulos hubieren caducado, por falta de heredero, a favor de El Pueblo de Puerto Rico, o en los cuales tuviere éste algún otro derecho o título.

De modo que la ley dispone de manera suficiente las medidas necesarias que han de adoptarse para que cualquier infracción de la Ley Orgánica pueda ser completamente investigada y perseguida por el Fiscal General. Si existe alguna duda en cuanto al límite de la facultad que tiene el registrador, esta duda aparece enteramente resuelta por las disposiciones de la Ley Orgánica y el artículo 73 del Código Político. El Fiscal General es el único funcionario en quien reside el derecho a iniciar procedimientos sobre revisión de bienes o atacar el derecho que tiene una corporación a poseer bienes inmuebles. Sin tal procedimiento judicial o casi judicial, una corporación podría ser privada de algunos derechos de propiedad sin el debido procedimiento de ley.

El hecho de que nada se especifique en una escritura no da al registrador derecho alguno para llegar a la conclusión de que la corporación no puede haber traspasado una parte de sus bienes ya inscritos. Nadie está obligado a inscribir sus bienes en el registro de títulos y el que vende a una corporación podría demorar indefinidamente la inscripción de dicho traspaso o venta. Pudiera existir una descripción errónea en el registro y poseer en realidad la corporación menos de 500 acres. A mayor abundamiento, el estatuto permite a una corporación aceptar traspasos de bienes en

pago de deudas. Por el hecho de que la escritura nada diga acerca de tal cuestión, no debe presumirse que los bienes no fueron adquiridos en tal forma. Todas estas cuestiones deben ser esclarecidas en un procedimiento claro ante una corte con arreglo a la ley, en el que tanto el gobierno como la corporación tengan la oportunidad de ser oídos. Otros inconvenientes resultan manifiestos si se permite al registrador resolver la cuestión. Si, por ejemplo, una corporación tenía 300 acres de terreno en el Distrito de Caguas y 300 acres en el Distrito de Humacao, ambas inscripciones pueden hacerse, puesto que ninguno de los registradores tendría acceso a los registros del otro. De modo que a una corporación que resulte tener todos sus bienes inmuebles en un distrito se le puede denegar la inscripción de una parte de los mismos, mientras que una corporación agrícola que tiene todas sus fincas repartidas podría obtener la inscripción completa de todas ellas.

A veces el registrador ha creído tener derecho a discutir la validez de una resolución u orden de la corte, pero siempre se ha resuelto que sus facultades en cuanto a ese particular están enteramente limitadas. La Corte Suprema de España en su sentencia de octubre 15, 1871, resolvió que la facultad de los registradores estaban limitadas por los artículos 18 y 65 de la Ley Hipotecaria, fuera de la cual no podrían actuar sin cometer una peligrosa ingerencia en una cuestión que pertenece a las cortes de justicia. Hemos resuelto uniformemente que un registrador no tenía derecho a discutir los hechos o prueba que ha sido considerada por una corte, así como tampoco a investigar acerca de la justicia de la sentencia. *Ramírez* v. *El Registrador*, 16 D. P. R., 348; *Fernández* v. *El Registrador*, 17 D. P. R., 1061; *Ramos* v. *El Registrador*, 18 D. P. R., 16; *Rivera* v. *El Registrador*, 14 D. P. R., 258. De estas sentencias resulta aun más claro el hecho de que el registro no es el sitio para juzgar asuntos que entrañan hechos a discutir.

Por las razones expresadas, la nota del registrador debe ser revocada.

*Revocada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados MacLeary, del Toro y Aldrey.