HARRY N. BAETJER, CLARENCE K. BOWIE, FRED C. BOYCE, LOUIS S. ZIMMERMAN, HARRY E. HENNEMAN, BURT O. CLARK y EARIE T. FIDDLER, como *Trustees* de la EASTERN SUGAR ASSOCIATES DE BALTIMORE, MARYLAND, y THE NATIONAL CITY BANK OF NEW YORK, recurrentes, *v.* EL REGISTRADOR DE LA PROPIEDAD DE GUAYAMA, recurrido.

No. 939.—*Sometido:* Marzo 30, 1935. *Resuelto:* Junio 14, 1935.

*E. T. Fiddler, Jorge L. Córdova* y *Jorge M. Morales,* abogados de los recurrentes; el registrador recurrido compareció por escrito.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Este recurso gubernativo ha sido interpuesto por Harry N. Baetjer, Clarence K. Bowie, Fred C. Boyce, Louis S. Zimmerman, Harry E. Henneman, Burt O. Clark y Earle T. Fiddler, como Trustees de la Eastern Sugar Associates de Baltimore, Maryland, y The National City Bank of New York, contra una nota del Registrador de la Propiedad de Guayama que dice:

"DENEGADA la inscripción de la escritura que precede, que es la No. 87, otorgada en San Juan, el día 29 de junio de 1934, ante el Notario Jorge M. Morales, con vista de otros documentos, y especialmente de la escritura No. 36, de 27 de marzo de 1934, otorgada ante el propio Notario, por observarse que la misma adolece de los siguientes defectos insubsanables: 1°. Si bien la entidad adquirente en este caso, Eastern Sugar Associates pretende ser un *business trust* de los comúnmente conocidos en la jurisprudencia americana con la denominación genérica de *common law* o *Massachusetts trust,* amén de que tales entidades no tienen personalidad jurídica ni capacidad civil reconocida por las leyes de Puerto Rico, dada su declaración constitutiva (declaration of trust), la forma y naturaleza de su organización y la forma y manera en que ha de poseer, administrar, disfrutar y disponer de los bienes que se le trasmitan, es, a los efectos de la ley número 40, de 23 de abril de 1928, relativa a la incorporación y reglamentación de compañías de fideicomiso, una compañía extranjera de fideicomiso, y antes de hacer negocios en esta Isla, está obligada a acogerse a la referida Ley de Compañías de Fideicomiso, requisito que no acredita haber cumplido, y a juzgar por la naturaleza de su organización se considera dispensada de cumplir, y sin cuyo

cumplimiento carece de capacidad civil para hacer negocios en Puerto Rico; 2°. Dada la declaración constitutiva (declaration of trust) de la referida organización, la adquisición de los bienes inmuebles que se le transfieren por la precedente escritura, es ilegal y contraria a la Ley número 40, de 23 de abril de 1928, relativa a la incorporación y reglamentación de compañías de fideicomiso, por los siguientes fundamentos: (a) a las compañías de fideicomiso, o corporaciones extranjeras les está prohibido adquirir, poseer y administrar bienes inmuebles con carácter de fideicomiso en Puerto Rico; y así mismo les está prohibido llevar a cabo directa o indirectamente negocios de índole similar a los de fideicomiso; (b) tratándose de una compañía de fideicomiso, y en la hipótesis de que pudiera realizar en Puerto Rico los negocios que se propone, los bienes adquiridos no le han sido trasmitidos directamente a su nombre, y por consecuencia no pueden inscribirse a su favor; (c) tratándose de una compañía de fideicomiso, y en la hipótesis de que pudiera realizar en Puerto Rico los negocios que se propone, la forma en que se constituye el fideicomiso a favor de personas indeterminadas, es contraria a lo preceptuado en el capítulo tercero, título tercero del libro tercero de nuestro Código Civil; (d) aún en la hipótesis de que estrictamente hablando, la referida entidad no pudiera denominarse compañía de fideicomiso, es una entidad o compañía extranjera, y por consecuencia le son aplicables las prohibiciones referidas en los apartados (a) y (b) que preceden; 3°. En la hipótesis de que el referido *trust* no pudiese calificarse como una compañía extranjera de fideicomiso, entonces, por su forma de organización, a los efectos de nuestra ley de Corporaciones Privadas, es una corporación extranjera, y para poder hacer negocios en Puerto Rico y antes de emprenderlos, está obligada a acogerse a la referida Ley de corporaciones, requisito que no acredita haber cumplido, y por el contrario, se considera dispensada de cumplir y sin cuyo cumplimiento carece de capacidad civil para hacer negocio en Puerto Rico; 4°. Considerado el referido *trust* como una corporación extranjera, ya a la luz de nuestra Ley de Corporaciones Privadas o a la Ley de Compañías de Fideicomiso, y proponiéndose, según su declaración constitutiva (declaration of trust) dedicar sus actividades a la explotación de fincas agrícolas en Puerto Rico, para dedicarlas al cultivo de caña, la adquisición efectuada por la escritura que precede, de fincas agrícolas con cabida en exceso de 500 acres para los fines indicados, envuelve la violación de la sección 3ª. de la Resolución Conjunta del Congreso de los Estados Unidos, de primero de mayo de 1900; 5°. En caso de que el referido *trust* no pudiera ser propiamente considerado como una corporación, del documento resulta que

650

las acciones del mismo, denominadas 'shares of beneficial interest' habrán de pasar al poder y dominio de la East Porto Rican Sugar Company, que es una corporación extranjera organizada y existente bajo las leyes del estado de Maryland, la cual ha de adquirir la condición de *cestui que trusten* con referencia a la Eastern Sugar Associates, viniendo a ser esta última, prácticamente, un instrumento de la primera para la posesión y disfrute de los bienes adquiridos con carácter de fideicomiso, y estando limitado el derecho de la East Porto Rican Sugar Company a poseer bienes inmuebles en Puerto Rico, por la Resolución Conjunta relacionada en el apartado cuarto anterior, tal limitación es efectiva no sólo contra dicha entidad individualmente, sino contra cualquiera otra que en su lugar y para su beneficio adquiera bienes en violación de la referida disposición legal; 6º. La agrupación de las trescientas diez fincas y de las cinco centrales adquiridas por el referido *trust,* en una sola finca que se extiende desde el distrito de Humacao hasta el de Guayama, a través de los pueblos de Cayey, Caguas, Juncos, Las Piedras, Naguabo, Yabucoa, Gurabo, Trujillo Alto y San Lorenzo, y de las islas adyacentes a Puerto Rico: Vieques y Culebra, es contraria a la Ley por las siguientes razones: A. El síndico de la Corte de Distrito de los Estados Unidos para Puerto Rico carecía de autoridad para efectuar dicha agrupación, y B. No resulta ni se acredita que todas esas fincas: (a) sean conocidas por un nombre común; (b) integren un cuerpo de bienes dependientes entre sí; y (c) dependan de un centro común; 7º. Dada la naturaleza y organización del *trust* adquirente, y la forma o manera en que ha de poseer los bienes inmuebles que se le trasmiten, conservando el título legal sobre los mismos a favor y en nombre de sus representantes o fideicomitentes (trustees) en fideicomiso, para beneficio de sus accionistas (*cestui que trusten*) cuyos derechos se representan por acciones transferibles en los libros del *trust,* es contraria a los principios fundamentales de nuestra legislación civil en lo que respecta a la posesión, goce y disfrute de bienes inmuebles, en el ejercicio del derecho de propiedad, y a la legislación hipotecaria en lo que respecta a la inscripción de esos mismos derechos; y se DENIEGA, además especialmente, la VENTA y la HIPOTECA en cuanto las mismas incluyen y se extienden a las servidumbres identificadas en la escritura que precede, con las letras (c) y (f) bajo los números (1-a) y (1-d), respectivamente, por aparecer del Registro canceladas por orden de la Corte de Distrito de Guayama. Con motivo de dichas denegaciones se ha tomado anotación preventiva por el término legal de 120 días a favor de Harry N. Baetjer, Clarence K. Bowie, Fred C. Boyce, Louis S. Zimmerman, Harry E. Henneman,

Burt O. Clark, y Earle T. Fiddler, en su carácter de *trustees* de la Eastern Sugar Associates, y no individualmente, y del National City Bank of New York, de sus derechos de compra e hipoteca, respectivamente, al folio 57 del tomo 80 de Cayey, finca No. 2953, anotación letra 'A'. Se ha consignado el defecto subsanable de no aparecer con toda claridad si la Central Defensa se incluye o no en la agrupación, pues en ciertas partes de la escritura que precede se dice que forma parte de la finca agrupada, pero se omite describirla entre las piezas que la integran.''

Al escrito interponiendo el recurso se acompañó por los recurrentes un alegato de 18 páginas que fué contestado por el registrador con otro de 152. Replicaron los recurrentes con uno de 48 páginas y duplicó el recurrido con otro de 32.

Los particulares (*b*) y (*c*) del segundo motivo de denegación y el séptimo motivo, han sido descartados de la discusión por el propio registrador. No habrá, por tanto, necesidad de considerarlos. Las cuestiones a estudiar y a resolver se simplifican y esclarecen a virtud de las siguientes indicaciones finales que tomamos del alegato del registrador, a saber:

Los dos primeros motivos de la nota parten de la base de que el *trust* recurrente es en Puerto Rico una compañía extranjera de fideicomisos. El primero ataca su capacidad para hacer negocios en esta isla y el segundo impugna la validez del título por contravenir ciertos preceptos de la Ley No. 40 de 1928 (pág. 235) reguladora de las Compañías de Fideicomisos.

El tercer motivo de denegación es alternativo. Para el caso de que el *trust* no pudiera ser considerado como una Compañía de Fideicomisos, entiende el registrador que debe considerársele como una corporación extranjera sujeta a la Ley General de Corporaciones de Puerto Rico.

El motivo número cuatro impugna la capacidad del *trust* para adquirir tierras en esta isla en exceso del límite establecido por la Carta Orgánica, atribuyendo a dicha entidad el carácter de una corporación, ya sea considerada como una

compañía de fideicomisos o como una corporación genéricamente hablando.

El quinto motivo imputa al *trust* la prohibición constitucional sobre adquisición de tierras en exceso del límite fijado por la ley, en tanto en cuanto de los títulos se infiere que el mismo es un instrumento de otra corporación para cuyo beneficio funciona.

Por el sexto motivo se impugna la agrupación de las varias fincas y centrales en una.

¿Es la "Eastern Sugar Associates" una compañía extranjera de fideicomiso?

La ley que regula esas compañías en Puerto Rico es la No. 40 de 1928, Leyes de 1928, p. 235.

Su artículo 1 dispone:

"Esta Ley se conocerá como 'Ley de Compañías de Fideicomisos' y será aplicable a todas las corporaciones que hasta ahora se hayan organizado o que en lo sucesivo se organicen con el fin de dedicarse al negocio de fideicomisos en Puerto Rico."

Y su artículo 2 prescribe:

"El término 'compañía de fideicomisos', para los fines de esta Ley, significa una corporación del país formada con el objeto de tomar, aceptar y cumplir o ejecutar los fideicomisos que legalmente se le confíen, actuando como fiduciario en los casos prescritos por la ley, recibiendo depósitos de dinero y de otra propiedad mueble; así como emitiendo documentos por los mismos, y prestando dinero con garantías reales o personales.

"El término 'compañía extranjera de fideicomisos', para los fines de esta Ley, significa una corporación organizada bajo las leyes de otro territorio o estado, de los Estados Unidos o país extranjero con el objeto de dedicarse al negocio de fideicomisos, lleve a cabo o no tal negocio en el lugar de su incorporación."

Examinemos la escritura de constitución de la entidad de que se trata. Se otorgó en Baltimore, Md., el 16 de enero de 1934, por Harry N. Baetjer, de Maryland, Fred C. Boyce, de Maryland, Louis S. Zimmerman, de Maryland, Clarence K. Bowie, de Maryland, Edward H. Burke, de Maryland,

James A. Stevenson, de New York, y Earle T. Fiddler, de Pennsylvania, y se protocoló, de acuerdo con sus propias disposiciones, en Puerto Rico, siéndolo en la notaría de Jorge M. Morales, el 27 de marzo de 1934. Copia de la misma certificada por el notario Morales, se presentó en el Registro con la escritura de compraventa cuya inscripción fué negada.

La declaración comienza así:

"WHEREAS, simultaneously with the execution hereof, there has been paid to the Trustees the sum of one hundred dollars ($100) in cash, to be held upon the trusts of this Declaration; and

"WHEREAS, additional cash and securities, and other property, real, personal or mixed, of any kind or character whatsoever, may be hereafter from time to time transferred to or acquired by the Trustees to be held upon the trusts of this Declaration; and

"WHEREAS, it is contemplated that the Trustees, as such Trustees, may acquire sugar estates in Puerto Rico with their mills, railroads, cane lands and other appurtenances and cultivate such lands and manufacture sugar molasses and other products in Puerto Rico;

"Now, THEREFORE, this Declaration witnesseth and it is hereby agreed and declared, that the Trustees shall hold the said one hundred dollars ($100) and any other property and assets of every kind and nature, both tangible and intangible, at any time acquired or received by them as Trustees hereunder, including, without limitation of the generality of the foregoing, all choses in action and all rights, powers and privileges arising out of or in connection with the said property or the business of this trust, together with the income therefrom and the proceeds thereof (all of the foregoing while so held being hereinafter usually called the 'trust estate') in trust in the manner and with and subject to the powers and provisions hereinafer contained concerning the same, for the benefit of the holders for the time being of the shares of this trust (hereinafter collectively called the 'Shareholders'), according to their respective interests and priorities."

Siguen once artículos. Trata el primero de la organización del fideicomiso. Dispone que sus negocios se harán bajo el nombre de "Eastern Sugar Associates," refiriéndose dicho nombre y las palabras "this trust" dondequiera que se usen en la declaración a los "Trustees" como tales y no a los "trustees" personalmente, ni a los oficiales, agentes o accionistas del "trust." El sitio principal de sus nego-

cios será Baltimore, Md. Los "Trustees", sujetos sólo a las limitaciones específicas de la declaración, tendrán el absoluto control, manejo y distribución de la propiedad del fideicomiso y la dirección de sus negocios. Se especifican éstos detalladamente pudiendo concluirse que se relacionan con la producción de azúcar desde la adquisición de tierras y la siembra de cañas hasta la instalación y operación de centrales, obtención de fondos y celebración de cuantos contratos y operaciones fueren necesarios para lograr su objetivo, agrícola, industrial y comercialmente.

Por el artículo segundo se prescribe que, con sujeción a lo dispuesto en el párrafo *M* del artículo anterior, el título a toda la propiedad del "trust" se transferirá y quedará investido en los "trustees." El número de éstos no será menor de siete. Sus servicios serán remunerados. Uno formará la clase C, la mitad de los restantes la clase A y la otra mitad la clase B. Desempeñarán su cargo hasta su muerte, renuncia, remoción o incapacidad legal. Un "trustee" clase A puede ser destituído por la acción de todos los otros de su clase. Lo mismo un "trustee" clase B. En el caso de que sólo existan dos "trustees" clase A o clase B, el poder de remoción podrá ser ejercido por la "East Porto Rican Sugar Co.", una corporación del estado de Maryland, que podrá también en casos especificados nombrar nuevos "trustees" para cubrir vacantes.

Trata el artículo tercero de los oficiales, agentes y comités, el cuarto de lo concerniente a las juntas de los accionistas y el quinto de las acciones y accionistas, prescribiendo en parte sus párrafos 1, "Shares in Trust Estate. The Beneficial interest in the trust estate shall be in the holders from time to time of transferable shares of beneficial interest.—The shares of beneficial interest originally authorized which may be issued from time to time by this trust in the discretion of the Trustees without the necessity of additional authorization are as follows: 200,000 Preferred shares, of one dollar ($1.00) par value each; 300,000 Common

shares, of one dollar ($1.00) par value each''; 3, ''This Declaration may be amended from time to time, in the manner provided in Section 9.3, to authorize shares in addition to those originally authorized . . .''; 4, ''Authorized shares of this trust may be issued from time to time in such amounts as the Trustees may determine, either for cash, services, securities, property or other value, or by way of stock dividend, or in exchange for other shares or securities of this trust at the time outstanding . . .''; 6, ''Shares of this trust may, in the discretion of the Trustees be acquired by this trust either out of surplus or out of capital . . .''; 7, ''A register or registers shall be kept under the direction of the Trustees which shall contain the names of the Shareholders and their addresses as supplied by them, and the number of shares held by them respectively, and a record of all transfers thereof . . .''; 8, ''Every Shareholder shall be entitled to receive a certificate in such form as the Trustees shall from time to time approve specifying the number and class of shares held by him . . .''; y 12, ''Shares of this trust shall be personal property entitling the holders only to the rights and interest in the trust estate conferred by the law of Maryland and by this Declaration, and shall not give to the holders any right to receive or posses specific property of this trust for any purposes. . . .''

Por el artículo 6.1 se establece que: ''No partnership is created by this Declaration or by the operations of this trust hereunder. It is expressly declared that, as between the Shareholders, Trustees, officers and agents of this trust, a trust and not a partnership is deemed to be created by this Declaration irrespective of whether any different status may be held to exist as far as others are concerned or in any other respect, and that the Shareholders shall be deemed to hold only the relationship of cestuis que trustent to the Trustees, with only such rights as are conferred upon them as such cestuis que trustent hereunder.''

Trata el artículo 7 de lo concerniente a *surplus* y dividendos. Dice en parte: "The net profits and surplus of this trust may be determined for any and all purposes on the basis of a consolidated earnings statement and a consolidated balance sheet of this trust and its subsidiary companies, irrespective of whether or not this trust shall have actually received dividends or other payments from none, some or all subsidiary companies."

Refiérese el octavo a las notificaciones y el noveno a lo concerniente a enmiendas, terminación y disposición final de la propiedad del "trust." A menos que termine voluntariamente antes en la forma que se prescribe, el fideicomiso continuará hasta la muerte de la última de las siguientes personas: E. G. Baetjer, 2nd. y T. R. Fiddler, hijo de E. T. Fiddler, no extendiéndose en ningún caso a más de veinte y nueve años contados desde la fecha de su constitución.

Por último los artículos diez y once tratan de la interpretación del documento y de su protocolización en Puerto Rico.

Veamos ahora cómo funcionó dicha entidad una vez constituída.

En la escritura de venta cuya inscripción fué denegada comparecieron Albert E. Lee como *Special Master* nombrado por la Corte de Distrito de los Estados Unidos para Puerto Rico en el caso de *Miller Fertilizer Company* v. *United Porto Rican Sugar Company,* la United Porto Rican Sugar Company, una corporación de esta Isla, representada por su Vice-Presidente Fernando Margarida, los *trustees* Baetjer, Bowie, Boyce, Zimmerman, Henneman, Clark y Fiddler de la Eastern Sugar Associates, The National City Bank of New York representado por los oficiales de su Sucursal de Caguas García Cabrera y del Río, la East Porto Rican Sugar Company, una corporación del estado de Maryland, representada por su apoderado Fernando Margarida, y E. T. Fiddler.

De acuerdo con una orden de la Corte Federal, el Special Master vendió en pública subasta el 25 de enero de 1934 todas las propiedades de la United Porto Rican Sugar Company, entre ellas más de treinta mil cuerdas de terreno, obteniendo la buena pro por tres millones quinientos mil dólares, E. T. Fiddler de acuerdo con el convenio que celebrara en 16 de enero de 1934 con la East Porto Rican Sugar Company, la Eastern Sugar Associates y el National City Bank of New York. El convenio se transcribe íntegro en la escritura. Es largo y difícil de resumir. El National City Bank of New York, el principal acreedor de la United Porto Rican Sugar Company, se puso de acuerdo con la East Porto Rican Sugar Company, de Maryland, la New Company formada para hacer frente con sus recursos a la negociación, con la Eastern Sugar Associates, el *trust,* que habría de encargarse finalmente de las propiedades y del negocio, y con E. T. Fiddler que actuaría como postor en la subasta transfiriendo luego lo adquirido al *trust* Eastern Sugar Associates, viniendo éste obligado a entregar sus acciones preferidas y comunes a la East Porto Rican Sugar Company de Maryland y a gravar sus propiedades a favor del National City Bank of New York.

Hecha la venta a E. T. Fiddler hizo éste a su vez el traspaso al *Trust* que hipotecó sus propiedades al Banco. El *Trust* y el Banco solicitaron la inscripción del documento múltiple finalmente otorgado o sea la escritura No. 87 ante el notario Morales en los registros de la propiedad de Caguas, Humacao y Guayama. Las notas puestas al pie del documento revelan que su inscripción se verificó sin dificultad en los dos primeros registros. Fué el tercero el que la denegó, recurriendo entonces el Banco y los *Trustees* para ante esta Corte Suprema.

Conocidos la ley, el acta constitutiva de la entidad y su funcionamiento, se impone la conclusión de que la Eastern Sugar Associates no se formó para dedicarse al negocio general de fideicomisos ni ha actuado como tal, no siendo por

tanto una Compañía de Fideicomisos. Es en sí misma un fideicomiso (trust) constituído en Maryland para dedicarse al negocio del azúcar en Puerto Rico.

■ ¿Es una corporación? El propio registrador la califica como un *trust* de los llamados en la jurisprudencia americana *common law* o *Massachusetts trust*. ¿Y qué son esas entidades?

En el caso de *Hecht* v. *Malley*, 265 U. S. 144, 146, hablando por la Corte Suprema de los Estados Unidos, su Juez Sanford se expresó así:

"El 'Massachusetts Trust' es una especie de organización mercantil, corriente en dicho estado, que consiste esencialmente en un arreglo según el cual se trasmiten bienes a fiduciarios de conformidad con los términos y condiciones de una escritura de fideicomiso, para que éstos los posean y administren en beneficio de aquellas personas que de tiempo en tiempo sean los tenedores de certificados trasmisibles otorgados por los fiduciarios y expresivos de las acciones en que está dividido el interés del tenedor en los bienes. Estos certificados, que se asemejan a los certificados de acciones expedidos por las corporaciones, y que son librados y transferidos en idéntica forma, dan derecho al tenedor de los mismos a participar a prorrata en los productos de los bienes y, a la terminación del *trust,* en sus propiedades.

"Según las decisiones de Massachusetts estas escrituras de fideicomiso son otorgadas para crear puros fideicomisos (trusts) o sociedades, según la forma en que los fiduciarios deban dirigir los asuntos encomendados a su cuidado. Si son los principales y están libres del control de los tenedores de los certificados en la administración de los bienes, se ha creado un fideicomiso; mas si los tenedores de los certificados son asociados en común en el control de los bienes como principales y los fiduciarios son meramente sus agentes administradores, se crea una relación de sociedad entre los tenedores de los certificados. Williams v. Milton, 215 Mass. 1, 6; Frost v. Thomson, 219 Mass. 360, 365; Dana v. Treasurer, 227 Mass. 562, 565; Priestley v. Treasurer, 230 Mass. 452, 455.

"Estos *trusts*—ora sean puros fideicomisos o sociedades—no están incorporados. No son organizados bajo ningún estatuto; y no derivan ningún poder, beneficio o privilegio de ley alguna. Los estatutos de Massachusetts, sin embargo, reconocen su existencia y les imponen, como 'asociaciones', ciertas obligaciones y responsabilidades."

La Corte Suprema de Massachusetts en el caso de *Larson* v. *Sylvester,* 185 N. E. 44, 45, decidido en marzo 29, 1933, dijo, por medio de su Juez Wait:

"Hablando en términos generales un fideicomiso no es una persona jurídica. Con la excepción que más tarde mencionaremos, no puede ser demandado. Está representado por el fiduciario. El lo simboliza, tiene el título y administra los bienes que posee en fideicomiso. Los contratos en relación con los derechos y bienes afectados por el fideicomiso son contratos del fiduciario. Él es personalmente responsable de ellos. No actúa como representante o mandatario de un tercero. Actúa en su propio beneficio, pero con obligaciones fiduciarias hacia otros. Magallen v. Gómez (Mass.) 183 N.E. 833; Gardiner v. Rogers, 267 Mass. 274, 278, 166 N. E. 763; Philips Carey Co. v. Pingree, 223 Mass. 352, 111 N. E. 857; Mayo v. Moritz, 151 Mass. 481, 24 N. E. 1083. Véase Cochrane v. Forbes, 265 Mass. 249, 255, 256, 163 N. E. 848; Hussey v. Arnold, 185 Mass. 202, 70 N. E. 87. Difiere de una corporación o de una sociedad. La primera es una persona artificial. La última, según la ley de Massachusetts, es una asociación de individuos unidos para dedicarse al comercio. La primera puede ser demandada como cuerpo corporativo a nombre propio. La última de ordinario debe ser demandada a nombre de los socios que la constituyen."

La Corte Suprema de California en el caso de *Coldwater* v. *Oltman,* 210 Cal. 408, 415, 420, dijo:

"Un examen del 'Acuerdo y Declaración de Fideicomiso', que se une como *exhibit* a la contestación de la parte demandada, que está representada por los Sres. Schweitzer & Hutton, demuestra que fué a virtud de dicho acuerdo que la Drascena Productions surgió a la vida del derecho. De esta declaración de fideicomiso se desprende que las partes envueltas trataron de crear un tipo de organización comercial conocido de ordinario como un fideicomiso de Massachusetts o mercantil. Toda vez que esta corte nunca ha resuelto directamente la validez e incidentes legales de este tipo de organizaciones mercantiles y toda vez que se desprende de los numerosos alegatos de los *amici curiae* radicados, que existe un considerable número de tales organizaciones en el Estado de California, parece conveniente que se haga en este momento una declaración definida de su status legal.

"Estas organizaciones, conocidas comúnmente con el nombre de 'Massachusetts trusts', se originaron debido a la hostilidad presentada por algunos estados hacia las corporaciones, y al deseo de aquellos que

las organizaban de lograr algunos de los beneficios que serían igualmente obtenidos con la incorporación, sin incurrir en las cargas y restricciones resultantes de la última. Debido a la disposición estatutaria existente en el Estado de Massachusetts que prohibe que las corporaciones se dediquen al negocio de bienes inmuebles, este tipo de organización alcanzó su desarrollo máximo y su más extenso uso en dicho Estado, pero, conforme se verá, ha sido adoptado en muchos otros Estados. Las principales ventajas de tales organizaciones desde el punto de vista de aquellos que deseen combinar sus riquezas para fines mercantiles, son que hasta hace poco en la mayoría de los Estados estaban exentas de reglamentación y de las cargas impuestas a las corporaciones, y sus miembros disfrutaban de la responsabilidad personal impuesta a los miembros de las sociedades mercantiles. Esta clase de organización no es otra cosa que la tentativa de utilizar el fideicomiso del derecho común con el objeto de explotar empresas mercantiles.

"Tal fideicomiso surge mediante una declaración de fideicomiso, según los términos de la cual aquéllos que deseen invertir capital convienen en crear un grupo directivo de fiduciarios, cuyos poderes y deberes dependen de los términos y condiciones del pacto de fideicomiso. El interés de cada copartícipe está evidenciado por certificados transferibles, similares a los certificados de acciones expedidos por las corporaciones y, en este Estado, están sujetos a la fiscalización del departamento encargado de las corporaciones. La organización no queda disuelta, como ocurre con las sociedades, al transferirse cualquier acción, ni a la muerte, demencia o quiebra de uno de sus miembros. El pacto de fideicomiso generalmente dispone que los fiduciarios y no los suscribientes serán los dueños de los bienes y en un verdadero 'Massachusetts trust' se da a los fiduciarios control absoluto de la administración del negocio. En la escritura de fideicomiso se provee siempre que los suscribientes no son personalmente responsables de ninguno de los actos realizados por los fiduciarios, exención de responsabilidad que, en este Estado, es aun mayor que la otorgada a los accionistas de corporaciones, excepción hecha de los accionistas de corporaciones limitadas a partir del año 1929.

*    *    *    *    *    *    *

"En ausencia de alguna autoridad que nos obligue en sentido contrario, no vemos razón alguna por la cual tales organizaciones, con la responsabilidad limitada que tiene, no deban ser reconocidas en este Estado. Es cierto que los estatutos de este Estado disponen responsabilidad limitada en los casos de sociedades y corporaciones limitadas, pero en dichas disposiciones estatutarias nada hallamos que

manifieste la intención de limitar la clase de organizaciones mercantiles que deberá disfrutar este privilegio, a las dos clases ya enumeradas. El artículo 2220 del Código Civil dispone expresamente que se pueden crear fideicomisos en bienes muebles para cualquier fin que en derecho pueda celebrarse un contrato. Es cierto que hasta 1929 se fijaron ciertas limitaciones a los fines para los cuales fideicomisos de bienes inmuebles podían ser creados, por el artículo 857 del Código Civil, mas, conforme se ha dicho antes, no existía tal restricción en lo que a fideicomisos de bienes muebles se refería. Estate of Walkery, 108 Cal. 627, 49 Am. St. Rep. 97, 41 Pac. 772; Estate of Hinckley, 58 Cal. 457, 482; Toland v. Toland, 123 Cal. 140, 55 Pac. 681. Pero aun las restricciones sobre fideicomisos en bienes inmuebles han desaparecido ahora a tenor de una enmienda hecha en 1929 al artículo 2220 del Código Civil. Nos parece claro que la política legislativa ya establecida en este Estado es no imponer restricciones a la formación de fideicomisos de bienes muebles, sino más bien dejar que tales organizaciones se dediquen a cualesquiera empresas legales. La ley de fideicomiso es tan parte de la política legislativa de este Estado como lo es la ley de sociedades y corporaciones limitadas. Es cierto que históricamente los fideicomisos no fueron usados con el objeto de explotar grandes empresas mercantiles y que fueron desarrollados por las cortes de equidad. Sin embargo, la ley no es estática sino que siempre continúa en estado de crecimiento y expansión, y durante los últimos años esta forma de administrar los bienes se ha extendido a casi todas las actividades. Sears on Trust Estates as Business Companies, 2d. ed., sec. 19; Wrightington on Unincorporated Associations & Business Trusts, 2d. ed., sec. 4. El simple hecho de que se haga un nuevo uso del fideicomiso no significa que haya de aplicársele nuevos principios de ley al determinar los derechos de los fiduciarios, fideicomisarios (*cestuis que trust*), acreedores del fideicomiso y otras personas que negocien con el mismo. Schumann-Heink v. Folsom, supra. Si esta nueva modalidad en el uso de los fideicomisos exige reglamentación o no, es cuestión que concierne al poder legislativo y no al judicial. Algunos estados han creído prudente reglamentar mediante estatuto esta clase de empresas mercantiles. Véase las Leyes Generales de Massachusetts de 1921, capítulo 182; Leyes y Resoluciones de Massachusetts de 1926, capítulo 290; Leyes de Oklahoma de 1925, capítulo 56; Leyes de Oklahoma de 1927, capítulo 17; y Leyes de Wisconsin de 1923 capítulo 431.''

Y a la página 1112 de 16 Fletcher Cyclopedia Corporations, Permanent Edition (1933), encontramos lo que sigue:

"Por regla general los fideicomisos mercantiles son creados enteramente por los actos de las partes; no son organizados de conformidad con ningún estatuto o disposición estatutaria que dependan de uno u otra para su existencia, aunque en algunos estados son en la actualidad reconocidos por ley y en muchos otros están sujetos a reglamentación gubernamental por disposiciones estatutarias. Son de hecho y de derecho compañías no incorporadas.

"El fideicomiso o los bienes poseídos en fideicomisos son considerados para determinados fines como una entidad legal en algunas jurisdicciones, más no así en todas.

"Los fideicomisos mercantiles no son corporaciones en el sentido estricto de la palabra aunque se les considera como tales por las cortes de algunos estados para determinados fines. No son creadas por estatuto sino que son asociaciones voluntarias de individuos, mientras que una corporación tan sólo puede existir mediante sanción legislativa y debe haber recibido una franquicia o sido organizada como tal corporación bajo una ley general."

La jurisprudencia que cita el registrador para sostener que el fideicomiso de que se trata en este caso es una corporación, se basa en leyes diferentes a las que rigen en esta isla. El propio funcionario recurrido a la página 58 de su alegato principal dice:

"Si bien es verdad que nuestra ley de corporaciones, ni nuestra carta orgánica, ni ninguna otra ley de esta jurisdicción definen en forma análoga a como están definidas en los estatutos de los estados antes citados las corporaciones, es lo cierto que dados los privilegios e inmunidades con que nuestra ley favorece a las corporaciones, podemos llegar fácilmente a la conclusión de que tales privilegios e inmunidades no son poseídos por los individuos ni por las sociedades civiles. No hay razón ninguna por la cual, no obstante no existir en nuestros estatutos una definición categórica de lo que es una corporación, no podamos, a la luz de los preceptos de nuestras leyes, catalogar dentro de su naturaleza, a una organización extranjera que disfrute de los mismos privilegios y prerrogativas que nuestra ley atribuye a tales entidades."

No es posible llegar tan lejos por la sola interpretación judicial, especialmente cuando existe en vigor una ley como

la No. 41 de 1928, para proveer la constitución de fideicomisos, Leyes de 1928, p. 295, que fué aprobada el mismo día que la No. 40 para disponer la incorporación y reglamentación de compañías de fideicomisos, y que forma hoy parte del Código Civil, Ed. 1930, p. 184, arts. 834 a 874.

Por ella, dejando subsistentes las disposiciones del Código contenidas en la sección tercera del capítulo segundo del título tercero, que se refieren a las substituciones fideicomisarias (artículo 710 a 715 de la dicha ed. de 1930) y expresamente disponiendo que nada de lo en ella contenido se entenderá que deroga o modifica el sistema hereditario establecido por el Código, se define el fideicomiso como un mandato irrevocable a virtud del cual se trasmiten determinados bienes a una persona, llamada fiduciario, para que disponga de ellos conforme lo ordene la que los trasmite, llamada fideicomitente, a beneficio del mismo o de un tercero llamado fideicomisario, y se dispone que el fideicomiso podrá constituirse por testamento o por acto *inter vivos,* y abarcar toda clase de bienes muebles o inmuebles, corporales o incorporales, presentes o futuros.

El fideicomiso por acto *inter vivos* y el constituído sobre bienes inmuebles deberá serlo por escritura pública que habrá de inscribirse. Podrá ser particular o universal, puro o condicional, a día cierto, por tiempo determinado o durante la vida del fideicomitente, del fiduciario o del fideicomisario, sin pasar de treinta años el que señala usufructo, renta o pensión a favor de persona jurídica.

Podrá el fideicomiso constituirse para cualquier fin que no contravenga la ley o la moral pública, prohibiéndose los secretos.

El fideicomitente puede ser persona natural o jurídica y puede crear el fideicomiso en cualquier forma, para cualquier fin y bajo cualesquiera términos y condiciones que no infrinjan la ley o la moral, y puede nombrar no sólo uno, sino varios fiduciarios, y dos o más fideicomisarios.

El fiduciario puede ser también persona natural o jurí-

dica. Tendrá todos los derechos y acciones correspondientes al pleno dominio, pero no podrá enajenar o gravar los bienes fideicomitidos a menos que para ello tenga autorización expresa o a menos que sin enajenarlos o gravarlos sea imposible la ejecución del fideicomiso.

También el fideicomisario puede ser persona natural o jurídica.

Dispone además la ley todo lo concerniente a la intervención de las cortes cuando sea necesaria y la extinción del fideicomiso y expresamente ordena que los bienes inmuebles transferidos por fideicomiso serán inscritos en el registro a nombre del fiduciario como en el caso de cualquier otra trasmisión de dominio, inscribiéndose como gravámenes las disposiciones del fideicomiso que limiten la facultad del fiduciario para enajenarlos o gravarlos.

Desde un principio han venido los recurrentes sosteniendo que ésa es la ley reguladora de su caso. Fué nuestra propia legislatura la que desde 1928 no sólo abrió el campo para que de modo legal se establecieran y desarrollaran sus actividades en nuestra isla las compañías de fideicomisos, si que los fideicomisos puros y aún los comerciales.

La personalidad jurídica del fideicomiso en este caso y la capacidad de sus fiduciarios (*trustees*) para adquirir bienes inmuebles y para hipotecarlos, surgen de los documentos presentados en el Registro, de acuerdo con la jurisprudencia y con las leyes en vigor en Puerto Rico, sin que pueda concluirse que el fideicomiso de que se trata constituye una corporación que debe organizarse y funcionar con arreglo a la ley sobre compañías de fideicomisos o a la ley general de corporaciones de la Isla.

Siendo ello así, caen por su base los motivos primero, segundo, tercero y cuarto de la nota recurrida.

██ Examinemos el quinto. Aceptando sin resolverlo que a virtud del examen del acta constitutiva del fideicomiso, del convenio inserto en la escritura de venta y de la venta misma, pudiéramos concluir, dentro de este recurso gu-

bernativo, que el "poder detrás del trono" es en este caso en realidad de verdad la East Porto Rican Sugar Company, una corporación extranjera, y que el fideicomiso meramente se creó para que dicha corporación pudiera adquirir tierras en mayor extensión que la permitida por la ley, nos enfrentaríamos de lleno con el que sin duda fué el motivo propulsor de toda la nota, a saber, oponerse a la violación de la Ley del Congreso que fija su política sobre el dominio de las tierras en Puerto Rico. Artículo 3 de la Resolución Conjunta de mayo 1, 1900, Estatutos Revisados y Códigos de Puerto Rico de 1902, p. XXXVI.

¿Puede el registrador por patrióticas que sean sus intenciones, vigorosa su mentalidad y hondos sus conocimientos y por extraordinario que haya sido el esfuerzo para ello realizado, llevar al campo de su juridicción el problema?

La cuestión no viene a este tribunal por vez primera. Fué ya resuelta en sentido negativo en varias de sus decisiones dictadas tras un detenido estudio de los hechos y la ley.

La primera de dichas decisiones es la de la *Compañía Azucarera de la Carolina contra el Registrador de San Juan,* 19 D.P.R. 152. La opinión de la corte, emitida por su Juez Asociado Sr. Wolf, fué unánime. En ella después de un estudio de las leyes envueltas, incluso la Hipotecaria, y de la jurisprudencia, se dice:

"Se verá por tanto, que una corporación cuyas facultades están limitadas por la ley o por sus estatutos, tiene hasta tanto el Estado intervenga, todas las facultades y capacidad que cualquier otro individuo capaz de adquirir bienes inmuebles posea. La corporación puede ejercitar cualesquiera actos de dominio sobre dichos bienes inmuebles; puede establecer acciones reivindicatorias o de desahucio, y exigir el cumplimiento específico de cualquier contrato. Tiene un título absoluto contra todo el mundo excepto el Estado después que se ha iniciado un procedimiento adecuado en una corte de justicia. Las disposiciones de la ley en Puerto Rico no son diferentes. La Ley Orgánica no prohibe la adquisición de bienes inmuebles sino que expresa solamente que una corporación dedicada a la agricultura, es-

tará limitada con arreglo a sus estatutos al dominio y posesión de una propiedad que no exceda de 500 acres de terreno.

    \*    \*    \*    \*    \*    \*    \*

"La Ley Orgánica en su artículo 21, dispone que el Fiscal General tendrá todas las atribuciones y ejercerá todas las funciones que por la ley corresponden a un fiscal, de territorio en los Estados Unidos, hasta tanto no sean localmente inaplicables.

"Y por el artículo 771 de los Estatutos Revisados de los Estados Unidos, entre otros deberes, el Fiscal General tiene el de entablar todas las acciones civiles en las que los Estados Unidos sean parte, y según otros artículos, los fiscales de los territorios tienen iguales facultades que los fiscales de las Cortes de Distrito de los Estados Unidos, de modo que las disposiciones contenidas en dicho artículo parecen determinar cuál es el funcionario que deberá proteger los intereses de Puerto Rico y quién establecerá las acciones en cobro de alguna multa o confiscación.

"Además, el artículo 73 del Código Político, según ha sido enmendado por las leyes de 1906, dispone que el Attorney General a instancias del Comisionado del Interior, promoverá demandas para la restitución de todos los bienes raíces y muebles, cuyos títulos hubieren caducado, por falta de heredero, a favor de El Pueblo de Puerto Rico, o en los cuales tuviere éste algún otro derecho o título.

"De modo que la ley dispone de manera suficiente las medidas necesarias que han de adoptarse para que cualquier infracción de la Ley Orgánica pueda ser completamente investigada y perseguida por el Fiscal General. Si existe alguna duda en cuanto al límite de la facultad que tiene el registrador, esta duda aparece enteramente resuelta por las disposiciones de la Ley Orgánica y el artículo 73 del Código Político. El Fiscal General es el único funcionario en quien reside el derecho a iniciar procedimientos sobre revisión de bienes o atacar el derecho que tiene una corporación a poseer bienes inmuebles. Sin tal procedimiento judicial o cuasi judicial, una corporación podría ser privada de algunos derechos de propiedad sin el debido procedimiento de ley."

Meses después, en el caso de la *Compañía Azucarera del Toa* v. *Registrador,* 19 D.P.R. 759, la Corte ratificó su criterio, en el que insistió tres años más tarde en los casos de *La Isabela Grove, Inc.* v. *Registrador,* 24 D.P.R. 257 y *P. R. Leaf Tobacco Co.* v. *Registrador,* 24 D.P.R. 262.

Desde entonces, o sea desde hace más de veinte años, el

Poder Judicial habló con toda claridad y mostró el camino. Los Poderes Ejecutivo y Legislativo Federales e Insulares y la Comunidad en general quedaron informados. ·Y es a ellos a quienes corresponde actuar.

■■ Resta sólo considerar el motivo de denegación relativo a la agrupación y al defecto subsanable.

Las propiedades de que se trata pertenecían a la United Porto Rican Sugar Co. puesta en liquidación ante la Corte Federal. Conocemos el convenio de acuerdo con el cual dichas propiedades fueron adquiridas en pública subasta por E. T. Fiddler y luego traspasadas a la Eastern Sugar Associates. En él se dispuso que:

"I. In so far as the Bank may require, and as and when the Bank shall require, the real properties mortgaged shall be consolidated into one or more agricultural entities and recorded as such in the registries of properties, and each and every parcel of the properties mortgaged shall secure the entire obligation or such proportion thereof, as the Bank in its sole discretion shall determine."

El banco insistió. Mostráronse de acuerdo todas las partes interesadas y para facilitar la transacción el Síndico nombrado por la corte hizo en efecto la agrupación, consignándose en la propia escritura de venta, pág. 877, que la agrupación se hizo por el Síndico a requerimiento y bajo la aprobación de la Eatern Sugar Associates. Además, bien puede sostenerse que lo hecho en tal sentido fué aprobado por la corte.

El registrador sostiene que la agrupación no pudo verificarse en primer término porque el Síndico carecía de autoridad y porque las fincas agrupadas no son conocidas por un nombre común, no integran un cuerpo de bienes dependientes entre sí, ni dependen de un centro común.

Bajo las circunstancias que concurren, creemos que el Síndico pudo actuar en la forma en que lo hizo. En el caso de *Palau* v. *Registrador,* 19 D.P.R. 372, 376, dijo esta corte:

"Agrupar en una varias fincas previamente inscritas, no constituye una enajenación o gravamen de las mismas. Tampoco tiene el

carácter de un contrato, y si bien es un *acto* que da lugar a una nueva inscripción en el registro, es a una inscripción de orden interior dentro del registro mismo que no crea, ni modifica, ni extingue derecho alguno.''

El Síndico actuó a petición de las partes y con la aprobación de la corte. Hecha a instancia y aceptada expresamente la agrupación por el dueño actual de las fincas, puede además considerarse que se hizo por el propio dueño.

¿Son agrupables tantas fincas, no contiguas muchas, situadas en diversos municipios y correspondientes a varios registros? Aunque se trata de un caso extremo, a nuestro juicio puede.

Dice el artículo 61 del Reglamento para la ejecución de la Ley Hipotecaria:

''Se inscribirán bajo un solo número si los interesados lo solicitaren considerándose como una sola finca, con arreglo al art. 8º. de la ley y para los efectos que el mismo expresa:

''Primero. Las propiedades rústicas conocidas con los nombres de haciendas, cafetales, ingenios, vegas, estancias, sitios, potreros, etc., que formen un cuerpo de bienes dependientes o unidos, con uno o más edificios y una o varias piezas de terreno con arbolado o sin él, aunque éstas no linden entre sí ni con el edificio, con tal que pertenezcan al mismo cuerpo de bienes y a una sola persona, o a varias *pro indiviso,* y aun cuando afecten al mismo gravámenes o derechos reales, correspondientes a una sola persona o a varias, y se componga de distintas suertes o porciones dadas en enfiteusis.''

Las resoluciones de la Dirección General de los Registros de España son al efecto de que para la agrupación precisa que exista unidad en el dueño, un nombre común para las fincas, que éstas integren un cuerpo de bienes dependientes entre sí, siéndolo además de un centro común.

Ya hemos dicho lo suficiente con respecto a la unidad de dueño. Todas las fincas pertenecieron a la United Porto Rican Sugar Co. y pertenecen hoy a la Eastern Sugar Associates.

En cuanto al nombre común citan los recurrentes la propia escritura de venta, página 774, en que se dice al comen-

zar la descripción de la finca agrupada: "Rústica: Un grupo de bienes dependientes designados con el nombre de 'Eastern Sugar Estates.'"

Y para demostrar que las fincas integran un grupo de bienes dependientes entre sí, sujetos a un centro común, invocan la cláusula de la dicha escritura que aparece a las páginas 772 a 774 de la misma, que dice:

". . . that in view of the fact that all the properties described above in Section First of this deed, composing piezas numbered from (1) to (91), both included, although not contiguous, constitute a single body of interdependent rural properties consisiting of a sugar estate of centrals named Central Pasto Viejo, Central Juncos, Central Santa Juana, Central Defensa and Central Cayey and their dependent lands dedicated to the growing and cultivation of sugar cane and the manufacture thereof into sugar and molasses, and the shipment of said products, forming and operated as a single agricultural and industrial enterprise, and exercising the right conferred by Article Eight of the Mortgage Law and Article Sixty-one of the Regulations of said Law, hereby groups, consolidates and merges all the said properties into one entity or 'agrupación' and agrees that it shall be recorded in the corresponding Registries of Property as a single estate under a single number as described below, and instructs and directs the corresponding Registrars of Property to record the same as a single estate under a single number so that it may be considered as one single property or estate for all legal purposes and the said properties having been herein so grouped, consolidated and merged constitute the rural estate described in the Spanish Language, as follows."

Y agregan en su réplica, pág. 46, al alegato principal del registrador:

"El Registrador debe limitarse al contenido de una escritura para calificarla. En cuanto a la agrupación tiene que limitarse a lo que diga la escritura y lo que aparezca del Registro y no lo que diga su conocimiento de la geografía.

"Si hubiera habido un medio de justificar la unidad industrial y administrativa del Eastern Sugar Associates que no hubiera sido por el propio documento como se hizo en este caso, le hubiera sido sumamente fácil a los recurrentes hacerlo. Hubiéramos podido probar que todas las propiedades agrupadas han sido operadas como sola

finca pues del propio registro constan contratos refaccionarios hechos por la United Porto Rican Sugar Company (of Porto Rico) con The National City Bank of New York donde se afectaban todas las propiedades agrupadas. También hubiéramos podido probar cómo casi todas las propiedades están unidas por ferrocarriles, embarcaciones o por vehículos de motor propiedad del *trust,* cómo caña cosechada en tierras de Vieques puede ser molida en Central Cayey, o Defensa, o Juncos, o Pasto Viejo, o Santa Juana; y cómo un buey, propiedad del *trust,* que trabaja la zafra en tierras de Cayey puede pasar el verano pastando en tierras de Vieques. Naturalmente para presentar esos hechos hubiera habido necesidad de audiencias públicas ante el Registrador. De la lectura de todos los documentos que se copian en la escritura se deduce claramente la unidad que exige la Ley Hipotecaria para la agrupación de fincas.''

El defecto subsanable no existe. De la escritura no resulta que fuera la intención de las partes incluir en la agrupación la finca en que está situada la Central Defensa. Dicha finca no se describe entre las que forman la agrupación. Los recurrentes sostienen que si el nombre de dicha Central se mencionó en la agrupación, lo fué por considerarlo ''necesario para identificar la finca agrupada, ya que las fincas alrededor de dicha Central Defensa y que forman con ésta una unidad en el fundo Eastern Sugar Estates, fueron agrupadas'' y no encontramos razón de peso para sostener lo contrario.

*Por virtud de todo lo expuesto debe revocarse la nota y ordenarse la inscripción solicitada.*

El Juez Asociado Sr. Córdova Dávila no intervino.